BEVERLY ENTERPRISES-VIRGINIA, INC., T/A, ETC.

v.

STEVEN C. NICHOLS, ADMINISTRATOR, ETC.

Record No. 930080

February 25, 1994

Present: All the Justices

*Joseph T. McFadden, Jr. (John A. Heilig; Heilig, McKenry, Fraim & Lollar,* on brief), for appellant.

*Moody E. Stallings, Jr. (Gregory Kim Pugh; Stallings & Richardson,* on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

The primary issue we consider in this medical malpractice action is whether the plaintiff is required to present expert testimony to prove the defendant's negligence.

Steven C. Nichols, administrator of the estate of Blanche Allene Nichols, filed this wrongful death action against Beverly Enterprises-Virginia, Inc., t/a Lynn Shores Manor. Beverly Enterprises-Virginia operates a nursing home under the trade name Lynn Shores Manor in Virginia Beach. Blanche Nichols was a patient there until her death. Steven Nichols alleged in his amended motion for judgment that Blanche Nichols choked and died because Beverly Enterprises' employees failed to assist her with eating. The jury returned a verdict in favor of the administrator and fixed damages at $100,000. We awarded the defendant an appeal.

In accordance with well-settled principles, we will review the facts and all reasonable inferences therefrom in favor of the plaintiff, who comes to this Court with a favorable jury verdict, confirmed by the trial judge.

Blanche Nichols was diagnosed as having Alzheimer's disease. When she was no longer able to care for herself, her two sons, Steven

Nichols and Gary R. Nichols, and their respective wives, provided primary care to her for approximately three years.

Blanche Nichols' mental capacity was impaired, and eventually she had to be restrained. She was unable to eat unassisted. In December 1988, Blanche Nichols choked while eating a pancake. Her daughter-in-law performed a "Heimlich maneuver," which forced the material from Blanche Nichols' throat. In January 1989, Blanche Nichols choked while eating. As a result of this incident, she was admitted to a hospital for approximately a week.

In December 1989, Gary and Steven Nichols concluded that they were unable to provide the care that their mother needed. Subsequently, she was admitted to Lynn Shores Manor on December 15, 1989.

Around the time of admission, Steven Nichols had a lengthy conversation with Jan Aubrey Marion, Jr., administrator of admissions at Lynn Shores Manor. Steven Nichols informed Marion that Mrs. Nichols could not eat unassisted. Steven Nichols also informed Marion of Mrs. Nichols' prior choking incidents. The nursing home's records that Marion completed, dated December 15, 1989, reveal that Mrs. Nichols required assistance when eating.

Kathy Nichols, Steven Nichols' wife, met with Marion around the time of admission and informed him that Blanche Nichols had choked twice previously. Marion informed Kathy Nichols that he would convey this information to the nursing home employees who would be working with Blanche Nichols.

On December 16, 1989, Kathy Nichols visited with Blanche Nichols "around lunchtime." While Kathy Nichols was visiting her mother-in-law in her room, an employee of Lynn Shores Manor entered the room with a tray of food and placed the tray on a "little roller table." No one from the nursing home, however, returned to assist Blanche Nichols with eating. Therefore, Kathy Nichols assisted her mother-in-law with her food.

Bonita Johnson, an employee at Lynn Shores, delivered a dinner tray to Mrs. Nichols on the evening of December 17, 1989. No one assisted Mrs. Nichols with her food. Phyllis L. Jones, a nurse's assistant helper, delivered a dinner tray to a woman who shared a room with Mrs. Nichols. No one had instructed Jones to assist Mrs. Nichols with her food. As Jones was helping Mrs. Nichols' roommate with her food, Jones noticed that "Mrs. Nichols didn't seem quite right." When Jones observed that Mrs. Nichols was sitting in her chair with her head turned sideways, she "ran immediately to get help."

Rebecca Taylor, a licensed nursing assistant, and Viola Fletcher, a licensed practical nurse, removed Mrs. Nichols from the chair and

placed her on the bed. According to Taylor, Mrs. Nichols was dead when Taylor and Fletcher placed Nichols' body on the bed.[1]

Fletcher knew that Mrs. Nichols "needed to be spoon-fed" and that someone "had to keep an eye" on her. Additionally, Fletcher testified that if Bonita Johnson left a tray of food in Mrs. Nichols' room, then that "would have been a mistake."

Dr. Faruk Presswalla, the deputy chief medical examiner for Tidewater, performed an autopsy on Blanche Nichols' body. He testified that the cause of Mrs. Nichols' death was asphyxia, commonly referred to as choking. Food had obstructed a portion of Mrs. Nichols' air passage, and some of the food was lodged in her windpipe.

The defendant asserts that the plaintiff sought to prove that the defendant was negligent because of its failure to inform its employees that Mrs. Nichols needed assistance when eating. The defendant contends that expert testimony is necessary to establish the appropriate standard of care and any breach thereof. Additionally, the defendant says that the plaintiff failed to "show what the standard of care required Lynn Shores to do with the information the Nichols family claim[ed] they gave about the prior choking incidents, or with the information from the hospital record that said that the patient needed to be fed all of her meals. The plaintiff did not put on an expert witness and properly qualify that witness as an expert on nursing home intake assessments or as an expert witness on how a patient is to be fed." The plaintiff, however, argues that under the facts and circumstances of this case, expert testimony is not necessary. We agree with the plaintiff.

Issues involving medical malpractice often fall beyond the realm of common knowledge and experience of a lay jury. Therefore, in most instances, expert testimony is required to assist the jury. Expert testimony is ordinarily necessary to establish the appropriate standard of care, a deviation from that standard, and that such deviation was the proximate cause of damages. *Raines* v. *Lutz,* 231 Va. 110, 113, 341 S.E.2d 194, 196 (1986); *Bly* v. *Rhoads,* 216 Va. 645, 653, 222 S.E.2d 783, 789 (1976).

In certain rare instances, however, as here, expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience. For example, in *Jefferson Hospital, Inc.* v. *Van Lear,* 186 Va. 74, 41 S.E.2d 441 (1947), we approved the judgment of a trial court confirming a jury verdict in favor of a plaintiff in a medical malpractice action

---

[1] Fletcher, however, testified that during this time, Mrs. Nichols was still alive and talking.

without requiring expert testimony. There, the patient, George A. Van Lear, fell and broke his hip while trying to locate a bathroom. Even though he had utilized a device that activated a signal light plainly visible to the floor nurse, neither the nurse nor any other attendant responded to his call during the 20- or 30-minute period that the signal light was activated. *Id.* at 78-79, 41 S.E.2d at 442-43. We held that the evidence was sufficient to support a finding of negligence because:

> [T]he attendants of the hospital were, of course, aware of the physical condition of Mr. Van Lear. They knew the nature of his operation and his disabilities. They had been instructed that he should not be permitted to answer a call of nature without the assistance of an orderly. They knew, or should have known, that a delay in answering his call for a nurse or an orderly for a service of this character might induce him to get out of bed and attempt to wait upon himself. Indeed, they had actual notice of this, because both a nurse and an orderly testified that on previous occasions he had gotten out of bed to attend to some trivial need.

*Id.* at 80, 41 S.E.2d at 443.

■ Here, as in *Jefferson Hospital,* the evidence is sufficient to support the jury's finding of negligence without the necessity of expert testimony on the appropriate standard of care. The defendant was aware of Mrs. Nichols' mental and physical condition. The defendant knew that she was unable to feed herself and that she had two prior serious choking incidents. In spite of this knowledge, the defendant's employee left a tray of food with Mrs. Nichols and failed to provide assistance to her. Certainly, a jury does not need expert testimony to ascertain whether the defendant was negligent because its employees failed to assist Mrs. Nichols under these circumstances.

Defendant contends that Code § 8.01-581.20 requires that the plaintiff present expert testimony to establish the applicable standard of care for a reasonably prudent nursing home. We disagree.

■ Code § 8.01-581.20 states, in relevant part:

> A. In any . . . action against a . . . health care provider to recover damages alleged to have been caused by medical malpractice where the acts or omissions so complained of are alleged to have occurred in this Commonwealth, the standard of care by which the acts or omissions are to be judged shall be that

degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or specialty in this Commonwealth and the testimony of an expert witness, otherwise qualified, as to such standard of care, shall be admitted.

This statute establishes the standard of care imposed upon a health care provider and gives a litigant the right to use qualified expert witnesses to provide testimony regarding that standard. We find nothing in Code § 8.01-581.20, however, that requires a plaintiff to present expert testimony to establish "that degree of skill and diligence practiced by a reasonably prudent practitioner" in all medical malpractice actions. Here, the question whether a reasonably prudent nursing home would permit its employees to leave a tray of food with an unattended patient who had a history of choking and who was unable to eat without assistance is certainly within the common knowledge and experience of a jury.

The defendant contends that the trial court erred by failing to strike the plaintiff's evidence or set aside the jury verdict because the plaintiff failed to present evidence of proximate causation. We disagree.

■ Dr. Presswalla testified that Mrs. Nichols died as a result of a mechanical asphyxiation from a bolus of food. Evidence at trial, taken in the light most favorable to the plaintiff, reveals that Bonita Johnson gave a tray containing food to Mrs. Nichols and no one helped Mrs. Nichols with her feeding. Even though Mrs. Nichols was unable to use a fork, she was able to use her hand and place food in her mouth. The jury was entitled to infer that she choked on food taken from this tray.[2]

As we have stated:

"The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred."

*Coleman* v. *Blankenship Oil Corp.*, 221 Va. 124, 131, 267 S.E.2d 143, 147 (1980) (quoting *Beale* v. *Jones*, 210 Va. 519, 522, 171 S.E.2d 851, 853 (1970)). Certainly, the evidence of record is sufficient to establish proximate causation between the defendant's negligent acts and Mrs. Nichols' death.

---

[2] We find no merit in the defendant's assertion that the plaintiff was required to prove that Mrs. Nichols did not choke on food purportedly provided to her by some unknown third person.

Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*