# CIRCUIT COURT OF SHENANDOAH COUNTY

Donna F. Buchanan

v.

Robert J. Karmy
and Shenandoah Valley
Ob-Gyn Group, Inc.

June 27, 2000

Case No. CL98-105

BY JUDGE JOHN J. MCGRATH, JR.

This case is currently before this court for consideration of Defendant's Motion to Set Aside the Verdict and to Enter Judgment *Non Obstante Veredicto*. This medical malpractice case was tried before a jury on November 8-9, 1999; the jury returned its verdict in favor of the Plaintiff in the amount of $100,000 plus interest.

Plaintiff alleged that Defendant, Karmy, who at all times was employed by Defendant, Shenandoah Valley Ob-Gyn Group, Inc., was negligent in connection with his treatment of, and surgery performed on, Plaintiff for gynecological problems. Specifically, Plaintiff alleged that Defendant was negligent in failing to properly diagnose and treat plaintiff and in not ordering additional diagnostic studies to determine the cause of plaintiff's "uncontrolled menorrhagia, dysmenorrhea." Furthermore, Plaintiff alleged that Defendant was negligent before, during, and after the "total hysterectomy" surgery that resulted in damage being done to Plaintiff's left ureter. At trial, Plaintiff called one expert, Dr. James Anderson, an obstetrician/gynecologist. Defendants claim that, although Dr. Anderson's testimony was "critical" of Dr. Karmy on "some of the issues," he did not testify as to the standard of care applicable in this case nor did he testify that Dr. Karmy failed to meet that standard. Based on this, Defendants contend that Plaintiff failed to establish

a prima facie case of professional negligence and as such, the verdict should be set aside and judgment entered as a matter of law on behalf of the Defendants.

In Virginia, a Plaintiff shows medical malpractice by expert testimony which "establish[es] the appropriate standard of care, a deviation from that standard, and that such deviation was the proximate cause of damages." *Beverly Enters.-Va., Inc. v. Nichols*, 247 Va. 264, 267 (1994). The expert must be able to testify as to the applicable standard of care, that the Defendant deviated from it, and that such deviation was the proximate cause of the injury to the Plaintiff. *See* Va. Code § 8.01-581.20; *Fairfax Hosp. System, Inc. v. Curtis*, 249 Va. 531 (1995).

In the case at hand, Dr. Anderson testified about the pre-operative care, the surgery, and the post-operative care. With regard to the pre-operative treatment, Dr. Anderson stated that while Dr. Karmy's direction to the Plaintiff to take Advil was "appropriate," it was also "insufficient" for the pain the patient was describing. (Tr. 200.) Moreover, Dr. Anderson stated that "surgery should be looked upon as an alternative, but an alternative after conservative measures have been attempted." (Tr. 206.) In this case, Dr. Anderson found no "indication that anything other than Advil was used" as an alternative therapy in this case. (Tr. 206.) Regarding the the decision by Dr. Karmy to perform the surgery at all, Dr. Anderson stated "I found no indication that she was a candidate for the surgery, except statements of menorrhagia and dysmenorrhea. But no history to substantiate that." (Tr. 197.) Furthermore, when asked what he would look for in a patient before performing such surgery, Dr. Anderson stated that:

> The minimum would be a history of her periods. When — how old was she when she started her periods? How regular or irregular are they? How long do they last? How much flow is there? Is there any clotting? If there is, how many days does it last? How many heavy days is there? This chart is replete of any kind of history like that from the beginning to the end.

(Tr. 203-04.) Dr. Anderson also testified that a hysterectomy, while usually an "elective procedure," should still be based on "existing pathology," which in this case did not exist. (Tr. 203.)

Speaking about the surgery itself, Dr. Anderson stated that there was no indication in the *report alone*, "looking at the report only as a report," that it was outside the standard of care. However, Dr. Anderson's expert opinion was not limited to the report alone. As an expert, he analyzed what procedure was

done and the origin of the resulting injury. If the expert was limited to the report alone, it leaves the door open for doctors to change reports or leave off important information that might be used against them. Therefore, continuing in his testimony, Dr. Anderson stated, when asked if he had an opinion as to how the Plaintiff's ureter was damaged in this case, that "with reasonable medical certainty" he could say that the degree of damage to this ureter "shouldn't have been injured in a normal uterus" like the one that the reports state was present in this patient. (Tr. 214-15.) Explaining this, Dr. Anderson stated that in a normal uterus, as the reports indicate the Plaintiff had, the Doctor should be able to visualize the ureter through most of the operation. With a normal uterus, like Plaintiff's, such injuries should not happen.

Finally, with regard to post-operative care, Dr. Anderson, stated that Dr. Karmy did not provide appropriate post-operative care to Mrs. Buchanan. (Tr. 217.) Expanding on this answer, Dr. Anderson stated that Dr. Karmy "apparently . . . wasn't interested to the extent to see that his orders were carried out." (Tr. 218.) Although Dr. Karmy ordered that Plaintiff's urinary output be monitored, he did not do this, because if he had, he would have noticed that she "had a marked decrease in urinary output as opposed to intake." (Tr. 218.) This, Dr. Anderson testified, "would have been the first indication that this lady was in trouble." (Tr. 218.) Furthermore, although Plaintiff was apparently experiencing an excessive amount of pain, as is evidenced by the amount of pain medication given to her, there was never any sufficient investigation as to what was causing the pain. (Tr. 219.) In Dr. Anderson's words, "To a prudent gynecologist, under these circumstances, it [such extensive back pain] denotes one thing and one thing only: ureteral obstruction." (Tr. 220.) Moreover, one day after being released from the hospital, Plaintiff returned to Dr. Karmy's office complaining that her pain medication was not working. At this time, according to the chart, all Dr. Karmy did was a "physical exam with the patient talking." When asked "What else could have been done at that time to determine the cause of the patient's pain?," Dr. Anderson stated:

> You know, it's confusing to me, as a physician, that a patient who has had an abdominal hysterectomy, with this much pain, doesn't have some kind of investigation. Some kind of an investigation of the pelvic organs. And one of the first things we think of is an IVP, intravenous pyelogram. It's a dye study of the kidneys and ureter. When a patient has any kind of complication that is not explainable post-hysterectomy, we get an IVP.

(Tr. 224-25.)

It is widely acknowledged that in Virginia, an expert in a medical malpractice case must testify about the standard of care and whether or not the Defendant Doctor failed to meet that standard. However, none of the cases that dictate this rule of law state that the expert must specifically utter the words "failed to meet" and "standard of care." This Court cannot find a single case setting out such a strict or uncompromising rule of substantive tort law. Considering Dr. Anderson's expert testimony as a whole, it is clear to the Court that Dr. Anderson relayed what the standard of care should have been and how Dr. Karmy failed to meet that standard. In speaking of the pre-operative care, for example, as discussed above, Dr. Anderson testified about proper doses of Advil and how "surgery should be looked upon as an alternative." Despite the actual words "standard of care" not being uttered, this was clearly what Dr. Anderson was referring to. When he subsequently stated that Dr. Karmy's direction to take the Advil was correct, but "insufficient" and that he found no indication that Dr. Karmy offered any realistic or viable alternatives to Plaintiff's surgery, Dr. Anderson was stating that Dr. Karmy failed to meet the standard of care during the pre-operative stages. Moreover, while discussing the surgery itself, Dr. Anderson explained to the jury the normal procedures involved and then continued on to explain why in a "normal" uterus, an injury like this should not have happened. Once again, without actually uttering the words "standard of care," Dr. Anderson relayed this information to the jury. Addressing the post-operative care by Dr. Karmy, Dr. Anderson was asked "What else should have been done?" Answering this question, Dr. Anderson, in effect, enunciated the standard of care for that situation. When he informed the jury that Dr. Karmy did not do this, he informed the jury that Dr. Karmy did not meet that standard.

Finally, the jury, in the jury instructions given to them by this Court, was properly instructed as to the standard of care. Specifically, Instruction No. 3 stated "A physician has the duty to use the degree of skill and diligence in the care and treatment of his patient that a reasonably prudent physician in the same field of practice or specialty in this Commonwealth would have used under the circumstances of this case." See Model Jury Instruction 35.000; Va. Code § 8.01-581.20. Furthermore, the jury was instructed to consider only the expert testimony to determine that degree of care that was required and that in doing so, they were to consider that expert's "basis for his opinions and the manner by which he arrived at it and the underlying facts and data upon which he relied." Instruction No. 5; Model Jury Instruction 35.050; Va. Code § 8.01-581.20. Considering these instructions and the others included with them, the jury found in favor of the Plaintiff. "The power conferred on the trial judge

under this section to set aside a jury verdict and enter judgment thereon can only be exercised where the verdict is plainly wrong or without credible evidence to support it." *Commonwealth v. McNeely*, 204 Va. 218 (1963); *Tyree v. Lariew*, 208 Va. 382 (1967). As such, considering the foregoing discussion, this Court finds there was "credible evidence" to support such a finding and therefore denies Defendant's Motion to Set Aside the Verdict and Enter Judgment *Non Obstante Veredicto*.

The Clerk of the Court is directed to send certified copies of this order to Karl L. Santone, Esq., Counsel for Plaintiff, and G. Rodney Young, Esq., Counsel for Defendant.