## CIRCUIT COURT OF FAIRFAX COUNTY

James E. Keegan

v.

Kaiser Permanente et al.

March 6, 2002

Case No. (Law) No. 196457

BY JUDGE R. TERRENCE NEY

This matter came before the Court on February 15, 2002, on Defendants' Christopher Ryan, M.D., and Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Defendants") Motion for Summary Judgment.

There is only one issue before the Court, namely, whether or not this case may proceed to trial without the Plaintiff's having designated an independent expert to testify as to the standard of care of a physician in prescribing a controlled drug.

In this medical malpractice action, the Plaintiff, James Keegan, alleges the following. On March 9, 1999, Mr. Keegan visited Dr. Ryan complaining of arthritic pain in his lower back. Dr. Ryan prescribed Daypro to control the pain. Mr. Keegan filled the prescription the same day. The Daypro relieved Mr. Keegan's arthritic pain.

On the night of March 26, 1999, seventeen days later, Mr. Keegan suffered several bouts of painful diarrhea and immediately called Kaiser Permanente. Mr. Keegan ceased taking Daypro the next day. During

subsequent weeks, Mr. Keegan resumed taking Daypro at a reduced dosage for the arthritic pain in his lower back.

Mr. Keegan refilled the Daypro prescription on July 5, 1999. Seventy-three days later, on September 16, 1999, Mr. Keegan visited Dr. Ryan with a red rash and an elevated temperature. Dr. Ryan cancelled the Daypro prescription and gave Mr. Keegan a prescription for Celebrex. Six days later, another doctor, substituting for Dr. Ryan, cancelled the Celebrex prescription.

Mr. Keegan subsequently called Searle Laboratory and was told that he should not have been prescribed Daypro. Searle sent Mr. Keegan a copy of the Daypro prescribing information, which stated that the elderly and those with digestive and hepatic problems should not be prescribed Daypro. At the time of his original visit on March 9, 2001, Mr. Keegan was seventy-nine years old, had a history of hepatitis A and jaundice, and had digestive problems. All of this information was contained in Mr. Keegan's medical file on March 9, 2001.

The Court entered a Scheduling Order on September 26, 2001, which required Mr. Keegan to identify, by January 29, 2002, any expert witnesses he intended to call at trial. Mr. Keegan, in response to Defendants' Interrogatories, identified Dr. Ryan and an official of Kaiser Permanente. There is no indication as to when Mr. Keegan responded. However, Defendants are not alleging that the responses were out of time. On the basis of this identification, Defendants filed their Motion for Summary Judgment. Defendants argue that Mr. Keegan's allegations involve complicated questions of pharmacology and internal medicine which are not within the general knowledge of the average juror. They further argue that because Mr. Keegan alleged a breach of the applicable standard of care with respect to the prescription of Daypro, he cannot establish either what the applicable standard of care was at the time of the prescription or that a breach of that standard occurred. (Defendants' Memorandum in Support at 4.)

This case is scheduled for trial on April 29, 2002.

## Expert Testimony in a Medical Malpractice Action

Va. Code § 8.01-581.20 provides that, in a medical malpractice proceeding, the testimony of a properly qualified expert witness as to the standard of care *shall* be admitted. (Emphasis added.) This language permits expert testimony, but it does not require expert testimony.

In an action for medical malpractice, the plaintiff needs to establish not only that a defendant violated the applicable standard of care, and therefore was negligent, but also that the negligent acts constituted a proximate cause of the injury. See *Bryan v. Burt*, 254 Va. 28, 486 S.E.2d 536 (1997). Most cases involving medical malpractice often fall beyond the realm of common

knowledge and experience of a lay jury. *Beverly Enterprises v. Nicholas*, 247 Va. 264, 441 S.E.2d 1 (1994). Therefore, in almost all medical malpractice cases, expert testimony is necessary to assist a jury in determining a health care provider's appropriate standard of care and whether there has been a deviation from that standard. *Dickerson v. Fatehi*, 253 Va. 324, 484 S.E.2d 880 (1997), citing *Raines v. Lutz*, 231 Va. 110, 641 S.E.2d 194 (1986); *Bly v. Rhoads*, 216 Va. 645, 222 S.E.2d 783 (1976). However, there are rare cases when the alleged negligent acts or omissions clearly lie within the range of a jury's common knowledge and experience, and, as a result, expert testimony is unnecessary. *Beverly Enterprises*, 247 Va. at 267; *Dickerson*, 253 Va. at 327. The mere absence of expert testimony on behalf of the plaintiff in such cases does not automatically warrant judgment in favor of the defendant.

In *Beverly Enterprises*, the administrator of an estate filed a wrongful death action against the nursing home at which the deceased, Blanche Nichols, was a patient until her death. The administrator alleged that employees of the nursing home were informed that Mrs. Nichols could not eat unassisted and that she had experienced two prior choking incidents. He further alleged that the nursing home's employees did not assist Mrs. Nichols with her food and that her death from choking was a direct result of this failure. The administrator did not put on an expert witness to testify about the relevant standard of care. On these facts, the jury returned a verdict in favor of the administrator and the nursing home appealed. The nursing home alleged that expert testimony was necessary to establish appropriate standard of care and any breach thereof. The administrator contended that, under the facts and circumstances of the case, expert testimony was not necessary. 247 Va. at 265-67. The Virginia Supreme Court agreed with the administrator stating that the case was one of the rare instances where "expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." 247 Va. at 267. According to the Supreme Court, "the evidence was sufficient to support the jury's finding of negligence without the necessity of expert testimony on the appropriate standard of care." 247 Va. at 268.

In *Dickerson*, the plaintiff filed a medical malpractice action against the defendant doctor after another surgeon discovered and removed a hypodermic needle from the plaintiff's neck. The plaintiff was admitted to the hospital for neck surgery to be performed by the doctor. Following the surgery, the plaintiff experienced severe pain in her right arm, hand and neck. Twenty months later, the other surgeon discovered and removed the needle. 253 Va. at 325-26. The plaintiff alleged that the doctor "negligently failed to remove [the] hypodermic needle from the plaintiff's neck at the close of surgery." 253

Va. at 326. In response to a pretrial discovery request to identify expert witnesses, the plaintiff named only a psychiatrist and a radiologist. The circuit court granted the defendant's motion for summary judgment on the grounds that the two experts named by the plaintiff were not qualified to testify on the appropriate standard of care. The plaintiff appealed, contending that expert testimony was not necessary to establish the appropriate standard of care and breach thereof. 253 Va. at 326-27. The Supreme Court found that the circuit court erred in ruling that expert testimony was necessary to establish the standard of care because "if the facts alleged and admitted by [the doctor] were presented to a jury, the jurors, absent expert testimony, reasonably could determine, by calling upon their common knowledge and experience, whether [the doctor] was negligent and whether his negligence was a proximate cause of Dickerson's injuries." 253 Va. at 328.

In short, in a medical malpractice case, the mere absence of expert testimony in support of the plaintiff's allegations is not enough to justify summary judgment. A further determination must be made as to whether the case is outside the common knowledge and experience of the jury and thus requires expert testimony.

## Summary Judgment

In Virginia, a trial court may enter summary judgment only if no material fact is genuinely in dispute. Va. Sup. Ct. R. 3:18. The Virginia Supreme Court has repeatedly cautioned courts about using summary judgment to short-circuit litigation pretrial and decide the dispute without permitting the parties to reach a trial on the merits and depriving the Supreme Court of an opportunity to review a thoroughly developed record on appeal. See *Renner v. Stafford*, 245 Va. 351, 429 S.E.2d 218 (1993); *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven, Ltd.*, 253 Va. 93, 480 S.E.2d 471 (1997); *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993); *Carson v. LeBlanc*, 245 Va. 135, 427 S.E.2d 189 (1993).

In *Renner*, the plaintiff filed a medical malpractice action alleging that the defendant had negligently prescribed medication inappropriate for the plaintiff's condition and that the prolonged use of this medication caused plaintiff to develop medical conditions. 245 Va. at 354. The circuit court granted the defendant's motion for summary judgment, finding that the statute of limitations had lapsed. The court agreed with the defendant that the statute of limitations began to run in early November 1988 and that the Plaintiff's notice of claim, filed on November 30, 1990, pursuant to Va. Code Ann. § 8.01-581.2, tolling the applicable two-year statute of limitations, was untimely. *Renner*, 245 Va. at 353. According to the Virginia Supreme Court,

the "medical evidence supporting the plaintiff's theory has not been developed fully, the record is incomplete on that question, and the trial court prematurely ruled on the issue. Manifestly, there are material facts genuinely in dispute." 245 Va. at 355. Based on this finding, the Virginia Supreme Court reversed the circuit court's granting of the defendant's motion for summary judgment.

Here, as in *Renner*, the record before the Court is incomplete. According to the Court's Scheduling Order, Mr. Keegan was required to identify his experts by January 29, 2002. Sometime prior to this date, Mr. Keegan identified Dr. Ryan and an official of Kaiser Permanente. The case is set for trial on April 29, 2002, and the discovery cut-off-date is not until March 30, 2002. To date, only one deposition has been noticed, but there is no indication that the deposition was taken.[1] In addition, the medical evidence supporting the plaintiff's theory has not been fully developed. It may be possible, for example, for the Plaintiff to elicit from Defendant Ryan, either in deposition or during trial, that he knew of the Plaintiff's condition prior to issuing the prescription of Daypro; that he knew of the warnings that were contained in the prescribing information that came with Daypro; and that he prescribed Daypro nonetheless.

The Virginia Supreme Court has not directly addressed the issue as to whether summary judgment is appropriate when a plaintiff has failed to designate an independent expert, although it did address the issue collaterally in *Walsh v. Bennett*, 260 Va. 171, 503 S.E.2d 904 (2000). In *Walsh*, the Virginia Supreme Court reversed the judgment of the circuit court that had dismissed a medical malpractice claim. After granting the defendant's motion to strike the plaintiff's expert because the expert had not been made available for a deposition in contravention of the court's discovery order, the circuit court dismissed the claim on the grounds that, without an expert witness, the plaintiff's evidence was insufficient as a matter of law to prove his claim for medical malpractice. Because these rulings were issued two days prior to the deadline in the discovery order, the Virginia Supreme Court held that the circuit court deprived the plaintiff of time to comply with the discovery order and reversed the judgment without reaching a decision on the issue of whether, without an expert witness, the plaintiff's evidence was insufficient as a matter of law. See *Walsh v. Bennett*, 260 Va. 171, 173-76, 503 S.E.2d 904, 905-07 (2000).

---

[1] The court recognizes that depositions may not be used in support of a motion for summary judgment, see *Gay v. Norfolk & Western Ry.*, 253 Va. 212, 483 S.E.2d 216 (1997); Va. Code § 8:01-420; Va. Sup. Ct. R. 3:18. Notwithstanding, the fact that no depositions have been taken and discovery is not otherwise finished makes clear that the record in this case is incomplete.

Other jurisdictions have, however, addressed the issue. Almost all of them have decided the issue of summary judgment after, at the very least, the taking of depositions. See *Richardson ex rel. Brown v. Lagniappe Hosp.*, 764 So. 2d 1094 (La. App. 2000) (affirming grant of summary judgment to defendants based on expert opinion evidence in support of motion for summary judgment); *Miller v. Sacred Heart Hosp.*, 753 A.2d 829 (Pa. Super. 2000) (affirming grant of summary judgment to defendants based on plaintiff's failure to produce expert opinion by the completion of discovery); *Lee v. Wall*, 726 So. 2d 1044 (La. App. 1999) (affirming grant of summary judgment to defendant based on affidavits of plaintiff and plaintiff's attorney, medical records of defendant and another doctor, and letter from a third doctor to plaintiff's counsel); *Weaver v. Robinson*, 627 N.E.2d 442 (Ind. App. 1993) (affirming grant of summary judgment to the defendant based on affidavits and unanimous medical review panel opinion); H. H. Henry, "Annotation, Necessity of Expert Evidence to Support an Action for Malpractice Against a Physician or Surgeon," 81 A.L.R. 2d 597 (1962). These jurisdictions adhere to the same rule as Virginia regarding the requirement of expert testimony to establish the standard of care and the deviation from that standard. These jurisdictions have also recognized the exception for situations in which the alleged deviation from the standard of care lies within the comprehension of the jury and requires only common knowledge and experience to understand and judge it.

In both their pleadings and at oral argument, Defendants base their argument for summary judgment solely on the fact that Plaintiff has not identified an independent expert. Yet it is not clear, from the record, that expert testimony will be required in order for the plaintiff to meet his burden of proof. The Defendants provide no evidence, beyond a summary argument that the case involves complex issues of pharmacology and internal medicine, that the testimony of an expert witness is in fact required. Standing alone, these arguments do not meet the burden for granting a Motion for Summary Judgment.

## Conclusion

In summary, the Court finds that granting Defendants' Motion for Summary Judgment is either not warranted or premature. The Virginia Supreme Court has repeatedly warned courts not to short-circuit litigation at the pretrial stage, thus depriving the court of an opportunity to review a thoroughly developed record on appeal. The record in this case has not been developed sufficiently to show that this case is not one of those rare instances in which the alleged negligent acts or omissions clearly lie within the range of a jury's common knowledge and experience so that expert testimony is unnecessary. Defendants' Motion for Summary Judgment is denied.