Thomas **PARKER, III, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

No. 1:06CV774.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 21, 2007.

Sol Z. Rosen, Washington, DC, for Plaintiff.

Ralph Andrew Price, Jr., United States Attorney's Office, Alexandria, VA, for Defendant.

### ORDER

ELLIS, District Judge.

In this Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, action, plaintiff, Thomas Parker III, alleges that the medical staff of the Bureau of Prisons negligently failed to diagnose and treat his neurological impairment. Defendant has moved for summary judgment. As the

matter has been fully briefed and argued, it is now ripe for disposition. For the reasons that follow, defendant's motion for summary judgment must be granted on the grounds that the undisputed facts demonstrate (i) that plaintiff did not comply with Virginia's expert certification requirement, Va.Code § 8.01–20.1, and (ii) that plaintiff cannot establish medical malpractice without the aid of expert testimony, as this matter is not one in which the act or omission is clearly negligent within the common knowledge of laymen. In essence, this case founders on the absence of an expert witness for plaintiff.

## I.[1]

The material facts may be succinctly stated. Plaintiff, an inmate at the Federal Correctional Complex in Petersburg, Virginia, alleges that in February 2005 he "fell over, hit his head against a wall and lost three teeth." Thereafter, plaintiff claims he complained of headaches to the prison medical staff for a period of thirty days.[2] In particular, on March 4, 2005, plaintiff visited the medical unit and reported significant headache pains, nausea (but no vomiting), and blurred vision. A mid-level practitioner,[3] Elizabeth Panaguiton, (i) conducted a physical examination, (ii) concluded that plaintiff's vital signs were stable and within normal limits, and (iii) released plaintiff. Three days later, plaintiff returned to the medical unit and reported to mid-level practitioner Richard Forth that he had been experiencing headaches for five days with vomiting. Forth examined plaintiff's head, concluded it was "unremarkable," and ordered x-rays of plaintiff's skull. These x-rays indicated that plaintiff's skull was normal, i.e., there were no fractures, increased pressure changes, or pathologic intracranial calcifications. Forth also conducted a physical exam and concluded that plaintiff's cranial nervous system was within normal limits. Plaintiff was released, but remained in the waiting room, and two hours later returned to Forth complaining of headaches. Forth prescribed stronger pain medication and released plaintiff again. Approximately six hours later, medical staff responded to a medical emergency involving plaintiff, who had fainted or passed out. At that time, Panaguiton examined plaintiff and observed objective signs of distress. Thus, Panaguiton contacted the staff physician on call, Dr. Benjamin Rice, who recommended plaintiff be transferred to the local community hospital for further examination. Thereafter, plaintiff was transferred to the Medical College of Virginia for emergency neurosurgery. Hospital records indicate plaintiff was suffering from an intracranial bleed, later diagnosed as a chronic subdural hematoma.

On July 5, 2006, plaintiff filed the instant complaint alleging that the medical staff negligently failed to diagnose and treat his neurological impairment. Defendant moves for summary judgment arguing (i) that dismissal is warranted as plaintiff

---

**1.** The facts recited here are derived from the record as a whole, pursuant to Rule 56, Fed. R.Civ.P. Where factual disputes exist, they are construed favorably to plaintiff, the non-moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**2.** It is worth noting that defendant vigorously contests this allegation. Citing to the available medical records, defendant asserts that from January 18, 2005, when plaintiff allegedly hit his head, to March 8, 2005, when plaintiff underwent surgery, plaintiff visited the medical unit seven times, but did not complain of headaches until March 4, 2005. As these facts are disputed, the facts are viewed in the light most favorable to plaintiff. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

**3.** A mid-level practitioner is a non-physician health-care provider such as a nurse practitioner or physician's assistant.

failed to comply with Virginia's expert certification requirement, Va.Code § 8.01–20.1, and (ii) that plaintiff has not asserted a *prima facie* case of medical malpractice because, without the aid of expert testimony, he cannot establish the elements of his claim.

## II.

The summary judgment standard is too well-settled to require extensive citation or elaboration here. In essence, summary judgment is appropriate only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). And importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Significantly, in this medical malpractice case, "because plaintiff has the burden of proof at trial to show medical negligence and causation, summary judgment is appropriate where it is clear that plaintiff has not adduced any evidence on these issues sufficient to create triable issues for the jury." *Callahan v. Cho*, 437 F.Supp.2d 557, 564 (E.D.Va. 2006).

## III.

Analysis of defendant's motion properly begins with the recognition that the FTCA is a limited waiver of sovereign immunity. *Id.* at 561. Thus, while the FTCA waives sovereign immunity with respect to actions for personal injury or property damage caused by the negligent or wrongful acts of a government employee acting within the scope of his employment, this waiver is limited in that the government is only "liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Further, the extent of this limited liability is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In this case, therefore, Virginia law governs the manner and extent to which defendant may be liable. *See Starns v. United States*, 923 F.2d 34, 37 (4th Cir.1991) (applying Virginia Medical Malpractice Act in FTCA action involving federally operated health care providers in Virginia).

### A.

■ As a threshold matter, the Virginia Medical Malpractice Act ("VMMA"), Va. Code §§ 8.01–581.1, *et seq.*, requires that a party alleging medical malpractice obtain an expert certification of merit prior to serving process upon defendant. Va.Code § 8.01–20.1.[4] Significantly, the failure to comply with this certification requirement is grounds for dismissal. *Id.;*[5] *see Administrator of the Estate of Kenneth Ross v. United States*, No. 3:06cv141 (E.D.Va. Jan. 31, 2007) (dismissing plaintiff's medical malpractice action under the FTCA

---

**4.** Specifically, Va.Code § 8.01–20.1 states as follows:

> Every motion for judgment, counter claim, or third party claim in a medical malpractice action, *at the time the plaintiff requests service of process* upon a defendant, shall be a certification that plaintiff has obtained from an expert witness ... a written opinion signed by the expert witness that, based upon a reasonable understanding of the facts, the defendant ... deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed.
> (emphasis added).

**5.** Specifically, the VMMA provides "[i]f the plaintiff did not obtain a necessary certifying expert opinion at the time the plaintiff requested service of process ... the court ... may dismiss the case with prejudice."

based in part upon plaintiff's failure to comply with the VMMA's expert certification provision); *cf. Callahan,* 437 F.Supp.2d at 564 (holding that plaintiff's failure to present a certificate of merit, as required under West Virginia law, was fatal to plaintiff's claim). Equally significant is that the VMMA provides only a limited exception to the certification requirement; the requirement may be excused only where "plaintiff, in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." Va.Code § 8.01–20.1. This exception, as the Supreme Court of Virginia has noted, applies only in "rare instances" because only rarely do the alleged acts of medical negligence fall within the range of a jury's or factfinder's [6] common knowledge and experience.[7] *Beverly Enterprises–Virginia v. Nichols,* 247 Va. 264, 267, 441 S.E.2d 1 (1994).

■ These principles, applied here, point persuasively to the conclusion that plaintiff cannot ignore or avoid the VMMA's certification requirement. It is undisputed that plaintiff failed to provide an expert certification of merit prior to serving process on defendant. To avoid dismissal, therefore, plaintiff must establish that this case is one of those "rare instances" where the alleged acts of medical negligence fall within a factfinder's common knowledge and experience.

Plaintiff has not done so. In this case, plaintiff alleges that the medical staff negligently failed to diagnose and treat his neurological impairment. In essence, plaintiff challenges the medical staff's professional medical judgment. Where, as here, a plaintiff "calls into question" a "quintessential professional medical judgment," the matter "can be resolved *only* by reference to expert opinion testimony." *Callahan,* 437 F.Supp.2d. at 563.[8] This is so because "the standard of care [would not] fall within the common knowledge or understanding of judges or lay jurors." *Id.* Indeed, as explained more fully in Part III. B., it is difficult to imagine that a factfinder, equipped solely with an average person's common knowledge and experience, may appropriately judge, *inter alia,* (i) what actions the prison medical staff should have taken when plaintiff complained of headaches; (ii) when the prison medical staff should have realized that plaintiff was suffering from a subdural hematoma, and (iii) what the proper course of treatment was for plaintiff's condition. As plaintiff's claims do not fall within the narrow common knowledge exception to the VMMA's certification requirement, plaintiff's failure to obtain a certificate of merit is fatal to his claim.

**B.**

■ Even assuming inapplicability of the VMMA's certification requirement, defendant is entitled to summary judgment

---

6. As this is an FTCA case, to be tried without a jury, the factfinder is the presiding judge. *See* 28 U.S.C. § 2402.

7. And, indeed, the common knowledge exception has been applied only in limited circumstances, for example, where a nursing home failed to prevent the choking death of a patient when they had previously been warned that the patient needed assistance while eating. *Beverly Enterprises,* 247 Va. 264, 441 S.E.2d 1.

8. *See Perdieu v. Blackstone Family Practice Center,* 264 Va. 408, 568 S.E.2d 703 (2002) (stating that "the issue of whether a fracture was diagnosed in a timely manner is a medical issue not within the common knowledge and experience of a jury"); *Bellecourt v. United States,* 784 F.Supp. 623 (D.Minn.1992) (holding that cases involving a failure to diagnose "bear little relationship" to those cases in which courts generally allow the case to proceed without expert testimony).

for reasons that mirror those compelling dismissal of plaintiff's complaint for failure to comply with the VMMA's certification requirement. In Virginia medical malpractice actions, "a plaintiff must establish not only that a defendant violated the applicable standard of care, and therefore was negligent, the plaintiff must also sustain the burden of showing that the negligent acts constituted a proximate cause of the injury or death." *Bryan v. Burt,* 254 Va. 28, 34, 486 S.E.2d 536 (1997). Put simply, plaintiff must establish: (1) the applicable standard of care, (2) a breach of that standard of care, and (3) that this breach proximately caused plaintiff's injuries. To do so, it is well-established that "expert testimony is ordinarily necessary." *Raines v. Lutz,* 231 Va. 110, 113, 341 S.E.2d 194 (1986).

█ Nevertheless, plaintiff asserts that no expert testimony is necessary to establish these elements as this is the rare case in which the act or omission is clearly negligent and within the common knowledge of laymen.[9] This argument fails as this case, which questions the medical staff's professional judgment, does not fall within a factfinder's common knowledge. To begin with, without the aid of expert

testimony, a lay factfinder would not know the appropriate standard of care,[10] or whether the medical staff's actions or failures to act constituted a breach of this standard. For example, a factfinder would not know, *inter alia,*

(i) What symptoms indicate the possible existence of a subdural hematoma;

(ii) Whether or when plaintiff exhibited such symptoms;

(iii) When plaintiff's subdural hematoma developed;

(iv) Whether the medical staff properly treated plaintiff at the various times he appeared at the medical unit during the alleged thirty day period, and when, if at all, that treatment ceased to be medically adequate under the appropriate standard of care;

(v) Whether any delay in diagnosis or treatment of plaintiff's condition occurred and, if so, whether that delay aggravated plaintiff's injuries; and

(vi) Whether plaintiff would have required neurosurgery regardless of the medical staff's alleged breach of care, in other words, whether sur-

---

**9.** Specifically, plaintiff contends that the medical staff's actions were clearly negligent because "plaintiff complained for a period of time, (by his account), at least for thirty days and was not given any substantial treatment other than Motrin .... [and] [t]he prison facility lacks the necessary equipment to evaluate an individual such as the plaintiff, until he literally collapses ...."

**10.** Notably, the only record evidence regarding the standard of care was presented by Dr. Katherine Laybourn, M.D., Ph.D., plaintiff's primary care physician at the prison. She stated that when an inmate complains of headaches a mid-level practitioner should:

inquire into the inmate's history, including head trauma, and determine whether the pain was accompanied by other signs or symptoms such as nausea, dizziness or

vomiting. Because headache pain is such a subjective complaint, it is important to conduct a comprehensive physical exam (including checking vital signs and conducting a cranial nerve system test), and compare the subjective allegations of pain to the objective findings of the physical exam.

Following plaintiff's surgery, Dr. Laybourn conducted a "chart review" of plaintiff's medical records, concluding that the medical staff "properly performed each one of these required tasks," "provided Mr. Parker appropriate medical treatment in response to his medical complaint of headache, and appropriately referred him to the local community hospital at the medically appropriate time." Plaintiff has neither presented evidence to suggest that the medical staff breached this standard of care, nor presented evidence that a different standard of care is applicable here.

gery have been required even if there had been an earlier diagnosis of plaintiff's subdural hematoma.

Put simply, there is no evidence of the standard of care applicable to the prison medical staff in the circumstances of this case and no evidence that the prison's medical staff failed to meet this standard of care. Accordingly, summary judgment is appropriate because, without expert testimony, plaintiff is unable to adduce any evidence of medical negligence sufficient to create triable issue of fact. *See Callahan,* 437 F.Supp.2d at 564.

In addition to plaintiff's inability to adduce evidence of negligence, plaintiff cannot, without the aid of expert testimony, establish proximate causation. As the Fourth Circuit has held, in

> malpractice cases, proof of causal connection must be something more than consistent with the plaintiff's theory of how the claimed injury was caused .... Conjecture, speculation, and mere possibilities will not sustain the plaintiff's burden of proof on the proximate cause element.

*Fitzgerald v. Manning,* 679 F.2d 341, 349 (4th Cir.1982); *Jeffress v. Reddy,* 77 Fed. Appx. 627 (4th Cir.2003) (noting that "expert testimony is needed to prove that the defendant's breach of the standard of care was 'more likely' or 'more probably' the cause of the plaintiff's injury—a jury may not speculate as to the cause of the injury"). In this case, plaintiff merely alleges, without any medical or scientific support, that his neurological condition was not appropriately diagnosed and treated, thus aggravating his injuries. Plaintiff has produced no evidence, other than his own testimony, indicating (i) that the medical staff's conduct had any detrimental impact on his condition, (ii) that the hospital staff should have acted differently, or (iii) that, but for the hospital staff's negligence, his injuries would have been avoided. Put

differently, no lay factfinder would know, as a matter of common knowledge and experience, (i) whether the subdural hematoma was caused by plaintiff hitting his head against the wall on January 18, 2005, or developed spontaneously on March 7, 2005, or at some other point in the alleged thirty day period, (ii) whether the prison medical staff should have provided treatment to plaintiff different from the treatment provided, and if so, what that treatment should have been, or (iii) whether the surgery plaintiff underwent was inevitable, regardless of the treatment provided. In this respect, there is no basis on which a lay factfinder can determine when the subdural hematoma should have been detected, what treatment should have been provided, and whether such treatment would have avoided plaintiff's surgery. In these circumstances, summary judgment is appropriate as plaintiff is unable to adduce any evidence, beyond mere conjecture and speculation, of proximate causation.

In conclusion, defendant's motion for summary judgment must be granted (i) because plaintiff did not comply with Virginia's expert certification requirement, Va. Code § 8.01–20.1, and (ii) because plaintiff cannot establish the various elements of a medical malpractice cause of action under Virginia law without the aid of expert testimony, as this matter is not one in which a lay factfinder would know whether the alleged medical acts or omissions clearly constitute medical negligence and whether these alleged acts proximately caused plaintiff to suffer any injury.

Accordingly, for these reasons, and for good cause,

It is hereby **ORDERED** that defendant's motion for summary judgment is **GRANTED.**

The Clerk is directed to send a copy of this Order to all counsel of record, to enter judgment in favor of defendant, pursuant

to Rule 54, Fed.R.Civ.P., and to place this matter among the ended causes.