PRESENT: Lemons, C.J., Goodwyn, McClanahan, Powell, Kelsey, and McCullough, JJ., and
Millette, S.J.

ALEXIA SUMMERS

v.  Record No. 160377

J. MICHAEL SYPTAK, ET AL.

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
July 20, 2017


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

Alexia Summers appeals from the dismissal with prejudice of her medical malpractice

action.  In her complaint, she alleged that Dr. J. Michael Syptak, a physician with Harrisonburg

Family Practice Associates, P.C., knew or should have known about certain conditions afflicting

her.  These conditions are described in the medical records of her earlier treatment by that

practice.  She alleged that, while treating her, Dr. Syptak made "unsolicited, unwanted,

inappropriate, and highly offensive sexual comments, 'jokes,' and sexual innuendo" and that

these statements caused her preexisting conditions to worsen.  On this appeal she focuses her

arguments on the contention that the circuit court erred in holding on summary judgment that a

plaintiff must proffer an expert who can testify concerning what medical records a physician is

required to consult under the standard of care and what statements a physician can make to a

patient.  Although Dr. Syptak contests the plaintiff's arguments on these points, he offers an

alternative ground for affirmance:  that the plaintiff's failure to designate an expert to testify

concerning proximate causation of her injuries is fatal to her case.  We agree with this alternative

ground, and we accordingly affirm the judgment of the trial court on that basis.

BACKGROUND

According to the allegations in the complaint, Summers was a patient at the Harrisonburg

Family Practice.  Beginning in September 2010, she received treatment from Dr. Deborah A. Nio

at this practice group for the psychological, emotional, and physical symptoms Summers was experiencing as a result of being the victim of "past and present sexual abuse and harassment," including at her workplace. In November 2010, Dr. Nio wrote that Summers may suffer from Post-Traumatic Stress Disorder, or PTSD. Summers experienced suicidal and homicidal thoughts. During this time, Dr. Nio prescribed various medications for her conditions, including anti-depressant, anti-anxiety, and sleep aid medications. Her treatment there continued through August 2011.

More than two years later, in March 2014, Summers returned to Harrisonburg Family Practice because of high blood pressure. Dr. Nio was unavailable, so she was seen by Dr. Syptak, another physician at the practice. Dr. Syptak happens to be Dr. Nio's husband. Summers alleged that, while treating her for high blood pressure over the course of several visits, Dr. Syptak "engage[d] in conduct involving unsolicited and unwanted sexual comments and innuendo to [p]laintiff, including the following:"

> a. Telling Plaintiff that if she lost weight she would feel and look sexy;
>
> b. Using the terms "Love," "Sweetpea," and "Sweets" in conversation with Plaintiff when referring to her;
>
> c. Describing his sex life with his wife including telling Plaintiff that although he had slowed down with age he was still like a "jack rabbit" and maybe that's why they've had a number of children;
>
> d. Telling Plaintiff a "joke" about a boy who did not want his mother to wash his white tube socks because he had masturbated and ejaculated into them;
>
> e. Inquiring about Plaintiff and her husband's sex life, wondering whether it was the same as his – "on and off;"
>
> f. Telling Plaintiff that around Harrisonburg the term "fiancée" is like "redneck layaway" - and how you can try them out before you buy the merchandise;

g. Giving Plaintiff a sample of a nasal spray and then "jokingly" telling her "it's for your nostrils - no other holes;"

h. Telling Plaintiff a story about a man who, when his wife left him, shot himself in the shoulder and how if his wife left him, while he might be upset at the outset, he would get over it as he would be able to see other women, including "the nanny," and have some fun; and

i. Describing to Plaintiff how he and his wife have sex in their king size bed; telling Plaintiff that for people their size it's like five beds and that "having sex is like boarding a pirate ship . . . it's true, I don't know if you ever had a big bed like that, but the wife wanted one and I was fine with it."

Summers surreptitiously recorded some, but not all, of these remarks. Dr. Syptak made some of these comments while Summers was accompanied by her husband and at least one of the comments was directed toward him.

Summers filed this action against both Dr. Syptak and Harrisonburg Family Practice, pleading theories of intentional infliction of emotional distress and negligence. She alleged that his "unsolicited, unwanted, inappropriate, and highly offensive sexual comments, 'jokes,' and sexual innuendo" caused the plaintiff's preexisting mental and physical health to "drastically" deteriorate. In response to interrogatories, Summers stated that, among other things, her PTSD, depression, and fibromyalgia worsened as a consequence of Dr. Syptak's statements.

Dr. Syptak filed a request for an expert witness certification under Code § 8.01-20.1, contending that the plaintiff was required to obtain an expert who could testify that the defendant had "deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed." The plaintiff responded that no expert certification was required because whether Dr. Syptak was negligent and whether the statements he made proximately caused the plaintiff's injuries were matters that fell "within the range of the jury's common knowledge and

3

experience." Dr. Syptak then moved for summary judgment, arguing that the plaintiff's failure to designate an expert required dismissal. He asserted that the plaintiff was required to designate an expert who could testify concerning "[t]he existence–and extent–of a physician's duty to review a patient's chart before treating her for hypertension," and that it "is not something that 'clearly' falls within the 'jury's common knowledge and experience.'" In addition, he noted that the plaintiff alleged that she had a preexisting history of mental distress and that "[u]nraveling whether [p]laintiff's psychiatric condition was caused by her visit[s] to Dr. Syptak, as opposed to those earlier traumas, is not something that is within the 'jury's common knowledge and experience.'" Dr. Syptak submitted an expert designation to address the extent to which a reasonably prudent family practice physician had a duty to review a patients' prior chart, and to what extent Dr. Syptak's statements to his patient deviated from the standard of care.

Summers later submitted an expert designation, designating Mercy Souder, a licensed professional counselor, as a prospective expert witness. In a report Summers attached to her designation, Souder detailed Summers' difficult childhood, her history of sexual abuse from a young age, and sexual harassment she experienced at work. Souder stated that Summers has been diagnosed with Bipolar Disorder and Post-Traumatic Stress Disorder, and that "her symptoms have worsened after the incident with her doctor in which he made vulgar and inappropriate comments." Souder, however, did not purport to offer any opinion expressing a conclusion that Dr. Syptak's comments were a proximate cause of the worsening of Summers' preexisting conditions. Dr. Syptak submitted a reply in support of his motion for summary judgment, arguing, among other things, that the plaintiff "needs – and does not have – a causation expert." Summers responded that whether Dr. Syptak's actions violated the standard of care was within the common knowledge of the jury and that the allegations that the plaintiff's

4

condition worsened after her visits to Dr. Syptak were sufficient to create a jury issue even without expert testimony.

The trial court granted summary judgment to Dr. Syptak on the basis that the plaintiff was required "to designate a qualifying expert to testify on the standard of care and causation." In its memorandum opinion, the trial court did not address the causation point in detail.

ANALYSIS

Summers assigns error to the trial court's holding that expert testimony was required. At trial, the parties and the court focused on two issues: (1) whether expert testimony was required to establish a physician's duty under the standard of care to familiarize himself with a patient's medical records and (2) whether a plaintiff needed to designate an expert who could offer an opinion on whether Dr. Syptak violated the standard of care in his communications with his patient. Dr. Syptak, however, also argued that the plaintiff was required to designate an expert who could offer testimony that Dr. Syptak's statements were a proximate cause of Summers' injuries. Although the trial court appears to have accepted this argument, it did not develop the issue in any detail. Nevertheless, we are "not limited to the grounds offered by the trial court in support of its decision, and [we are] 'entitled to affirm the court's judgment on alternate grounds, if such grounds are apparent from the record.'" *Perry v. Commonwealth*, 280 Va. 572, 582, 701 S.E.2d 431, 437 (2010) (quoting *MM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir. 2002)). *See also Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 542, 790 S.E.2d 484, 487 (2016) ("'This Court may uphold a judgment even when the correct reasoning is not mentioned by a party in trial argument or by the trial court in its decision, as long as the record contains sufficient information to support the proper reason.'") (quoting *Haynes v. Haggerty*, 291 Va. 301, 305, 784 S.E.2d 293, 294 (2016)). We hold that the plaintiff was

5

required to designate an expert who could offer testimony that Dr. Syptak's words were a proximate cause of the aggravation of the plaintiff's preexisting conditions.

The general rule in medical malpractice cases is that an expert is required to establish that the defendant "deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed." Code § 8.01-20.1. As we have noted, "[i]ssues involving medical malpractice often fall beyond the realm of common knowledge and experience of a lay jury." *Beverly Enterprises-Virginia, Inc. v. Nichols*, 247 Va. 264, 267, 441 S.E.2d 1, 3 (1994).

There is an exception to this rule, although its application is "rare." *Id.*; *Raines v. Lutz,* 231 Va. 110, 113, n.2, 341 S.E.2d 194, 196 n.2 (1986). Under this exception, "expert testimony is unnecessary [when] the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." *Beverly Enterprises-Virginia*, 247 Va. at 267, 269, 441 S.E.2d at 3, 4 (no expert required to establish the standard of care because "whether a reasonably prudent nursing home would permit its employees to leave a tray of food with an unattended patient who had a history of choking and who was unable to eat without assistance is certainly within the common knowledge and experience of a jury"); *Webb v. Smith*, 276 Va. 305, 308, 661 S.E.2d 457, 459 (2008) (doctor agreed to perform two distinct operations at the same time but only performed one, requiring the plaintiff to undergo a second surgery; the issue of causation in that instance "was within the common knowledge of laymen").

Summers suffered from a number of debilitating preexisting conditions, including PTSD, fibromyalgia, depression, and radiculopathy. She alleged that Dr. Syptak's statements caused these conditions to worsen. This Court has not previously addressed the question presented here: whether a plaintiff suffering from preexisting mental, emotional, or physical conditions such as

6

those at issue here must designate an expert who can testify that a physician's statements were a proximate cause of the aggravation of such preexisting conditions.

Although the facts are not exactly parallel with the present case, courts in other states have addressed analogous situations. *See Singh v. Lyday*, 889 N.E.2d 342 (Ind. Ct. App. 2008); *Hare v. Wendler*, 949 P.2d 1141 (Kan. 1997); *Carmichael v. Carmichael*, 597 A.2d 1326 (D.C. 1991). In each of these cases, a psychologist or a psychiatrist engaged in sexual relations with a patient who suffered from preexisting conditions. The plaintiff claimed there was no need for expert testimony. In addressing the issue, our sister courts have recognized that the existence of preexisting conditions complicates the question of whether the injuries were attributable to the misconduct. *Singh*, 889 N.E.2d at 358; *Hare*, 949 P.2d at 1148; *Carmichael*, 597 A.2d at 1331. In each instance, those courts rejected the plaintiff's argument that a jury was qualified to determine causation unaided by expert testimony. *Singh,* 889 N.E.2d at 359; *Hare*, 949 P.2d at 1148; *Carmichael*, 597 A.2d at 1331.

We find the reasoning of these cases persuasive. Ordinarily, when there are preexisting conditions, "discerning the causal connection between [the alleged malpractice] and [the patient's] resulting injuries is a complicated medical question that is not within the understanding of a lay person." *Singh*, 889 N.E.2d at 358 (alternations in original) (quotations and citations omitted). A lay jury is not equipped from common experience with the knowledge of what can cause the aggravation of complex preexisting medical problems like PTSD, fibromyalgia, depression, and radiculopathy. Consequently, expert testimony is required. The plaintiff did not produce such an expert. Therefore, the trial court correctly dismissed the action.[1]

---

[1] The circuit court ruled that the plaintiff's intentional infliction of emotional distress claim survived summary judgment, but the plaintiff later nonsuited that claim.

Summers points us to several tort cases outside of the medical malpractice context for the proposition that lay testimony is admissible on the question of causation. *See Bussey v. E.S.C. Rests, Inc.*, 270 Va. 531, 538, 620 S.E.2d 764, 768 (2005) (illness following restaurant meal); *Todt v. Shaw,* 223 Va. 123, 126, 286 S.E.2d 211, 213 (1982) (motor vehicle accident); *Sumner v. Smith*, 220 Va. 222, 226, 257 S.E.2d 825, 827 (1979) (same); *Pepsi-Cola Bottling Co. v. McCullers*, 189 Va. 89, 97, 52 S.E.2d 257, 260 (1949) (mouse found in a soda bottle). That line of authority is inapposite here. This case is a medical malpractice action, and the General Assembly has imposed a presumptive requirement of expert testimony in such cases. *See* Code § 8.01-20.1.

Summers also relies on *Nichols v. Kaiser Found. Health Plan*, 257 Va. 491, 514 S.E.2d 608 (1999). In *Nichols*, the plaintiff alleged that a pharmacist provided the wrong medication, a steroid that was five times more potent than the medication she was supposed to receive, and that she suffered adverse effects from the error. *Id.* at 493, 514 S.E.2d at 609. She did not present what this Court characterized as "pure" expert testimony, that is, she did not offer a qualified expert who responded to hypothetical questions. *Id*. at 499-500, 514 S.E.2d at 612-13. She did, however, present "abundant opinion testimony from plaintiff's treating physicians." *Id.* at 499, 514 S.E.2d at 612. Her treating physician related the symptoms she experienced to the erroneously dispensed steroid. *Id.* at 495-96, 514 S.E.2d at 610-11. The plaintiff also testified about the adverse effects the medication had on her and her son testified about the change in her condition after she began taking the erroneously provided medication. *Id.* at 496-97, 514 S.E.2d at 611. We reasoned that

> the case reduces to whether there was sufficient evidence,
> comprised of medical opinion and lay testimony, to present a jury
> question on causation. We answer that query in the affirmative;
> testimony from a "pure" expert witness was unnecessary.

*Id.* at 499, 514 S.E.2d at 612. The "medical facts and medical opinion combined with lay testimony, without the addition of 'pure' expert testimony," was sufficient for that case to go to the jury. *Id.* at 500, 514 S.E.2d at 613. In this case, however, there was no comparable linking of medical opinion and lay testimony. All the plaintiff was able to tender, from her own testimony and from her licensed professional counselor, was that her symptoms became worse after Dr. Syptak made his comments. She did not, however, identify an expert witness who was prepared to offer an opinion that Dr. Syptak's comments were a proximate cause of her worsened condition.

Just because a plaintiff suffers a deterioration of several preexisting conditions after seeing a physician does not mean that the doctor's actions were a proximate cause of the plaintiff's worsened condition. Indeed, there is a name for the logical fallacy that assumes a causal relationship from a merely sequential one: "*post hoc ergo propter hoc*," which is Latin for "after this, therefore because of this." Black's Law Dictionary 1285 (9th ed. 2009). To illustrate, one might erroneously reason that since a rooster crows each day at sunrise, the rooster causes the sun to rise. A more concrete historical example is the mistaken attribution of cholera epidemics to "miasma" exposure, that is, exposure to polluted fumes and toxic aromas. In fact, the disease is caused by bacterial contamination of water. *See* Steven Johnson, The Ghost Map (2006) (discussing the pioneering scientific work of London physicians in identifying the source of cholera epidemics). Whether the alleged acts of malpractice aggravated preexisting conditions like radiculopathy, PTSD, and fibromyalgia or whether her symptoms stemmed from some other cause presented a complex question beyond "the jury's common knowledge and experience." Code § 8.01-20.1; *see also* Va. R. Evid. 2:701 (providing that "[o]pinion testimony by a lay witness is admissible if it is reasonably based upon the personal experience or

9

observations of the witness"); Va. R. Evid. 601 (providing that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"). Without evidence proffered as required by Code § 8.01-20.1 that even addresses the issue of causation, the trial court correctly entered summary judgment for the defendant.[2]

## CONCLUSION

For these reasons, we will affirm the judgment of the trial court.

*Affirmed.*

---

[2] Our resolution of the case on this ground obviates the need for us to address whether and when a plaintiff must proffer an expert who can testify concerning what the standard of care requires of a physician with respect to consulting past medical records.