PRESENT: All the Justices

DESE TERRELL JOHNSON

OPINION BY
v. Record No. 170963                CHIEF JUSTICE DONALD W. LEMONS
OCTOBER 18, 2018
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether admitting hearsay evidence in a probation revocation proceeding violated Dese Terrell Johnson's ("Johnson") right to confront witnesses against him under the Due Process Clause of the Fourteenth Amendment.

I. Facts and Proceedings

In 2005, Johnson was convicted of rape in the Circuit Court of King George County ("circuit court"). The circuit court sentenced Johnson to 30 years' incarceration with 20 years suspended. The suspended portion of Johnson's sentence was conditioned on good behavior and supervised probation. In June 2016, approximately one and a half years after Johnson's release, Johnson's probation officer reported to the Commonwealth's Attorney of King George County that Johnson had violated multiple conditions of his probation, including the condition that he "not have any contact with anyone under the age of 18." Upon request of the Commonwealth's Attorney, the circuit court issued a capias for Johnson's arrest on the ground that he had "apparently violated conditions of his probation."

The circuit court held a probation revocation hearing on August 23, 2016, where Johnson appeared with counsel. At the beginning of the hearing, Johnson objected to a portion of the "major violation report" prepared by Johnson's probation officer, which states:

> On May 31, 2016, this [Probation] Officer was contacted by
> Caroline Sheriff's Detective William Greene, who stated that on
> May 30, 2016 two juvenile females, ages 16 and 17, were

approached by Johnson while at the [Rappahannock] river. Johnson told the females his name was Justice and he goes by "J." Johnson asked the females their age and they were honest with Johnson. Johnson gave his number to the females. The females were uncomfortable with the situation and looked on Fredericksburg.com and WatchDog.com to see if they saw the person who approached them. The females found Johnson on Watchdog.com during their search and were able to identify the man in the picture as the man who approached them claiming to be Justice. The females engaged in a text message conversation with Johnson that evening using the texting app, Pinger.com, where Johnson made multiple attempts to meet the females during the evening.

As part of his argument in support of his objection, Johnson's counsel stated that he checked the websites in the major violation report and could not "find [Johnson's information] there." As a result, Johnson challenged the "veracity" of the girls' allegations. He contended that if he was not afforded an opportunity to cross examine the girls, it would violate his right to confront witnesses against him under the Due Process Clause of the Fourteenth Amendment. Consequently, he objected to any hearsay evidence of the girls' allegations.

The Commonwealth responded that under *Henderson v. Commonwealth*, 285 Va. 318 (2013), "hearsay is admissible in a probation violation revocation hearing," if it has "some indicia of reliability." The Commonwealth stated that it would present witnesses whose testimony would corroborate the girls' allegations, thereby satisfying the reliability test under *Henderson*.

After reviewing *Henderson*, the circuit court took Johnson's objection under advisement. The court explained that hearsay evidence of the girls' allegations "may be corroborated by a number of facts that make it reliable." The court determined that the girls need not "give testimony in open court so that the defendant can cross-examine them," if the Commonwealth establishes that the girls' statements are reliable.

The Commonwealth called Deputy William Greene of the Caroline County Sheriff's Office ("Greene"). He testified that while he was on patrol, one of the girls' mothers "flagged [him] down," and "directed [him] to go to a residence in the Town of Port Royal where her daughter was located." Green proceeded to the residence and met with the girls, who were minors at that time.

When the Commonwealth asked Green what the girls "relay[ed]" to him, Johnson objected on confrontation grounds, arguing that Green could not testify to the girls' statements because the Commonwealth had not established that the statements were "reliable." The Commonwealth responded that Johnson's "concerns" about "reliability" were "fodder for [the] cross-examination" of Greene. Agreeing with Johnson, the circuit court ruled that "before anyone gives direct testimony as to what these two girls say happened, [the court] want[s] to have evidence from the person who has received these statements what they did to determine whether there's truth to those statements."

Greene then testified that the girls gave him the name Dese Johnson and that he had not heard the name beforehand. Green stated he "confirm[ed] that there was a person living in the area that was named Dese Johnson," who "was a convicted sex offender." Green also "confirm[ed]" that "the description that the girls gave [him]" of the man who approached them "match[ed]" the description of the sex offender named Dese Johnson "on the Virginia State Police website." Before collecting a written statement from the girls, he stressed that they should be honest.

Greene further testified that the girls emailed him screenshots of text messages that the girls claimed to have exchanged with Johnson. In the text messages, the girls identified themselves by their first names. The other party identified itself as "Justice." The girls asked

3

Justice for his "full name," and Justice responded, "sorry but I don't give my full name to people I just met."

The text messages contain statements about Justice and the girls' ages. For example, the girls stated, "I don't believe your 28 though, you look so young! I thought you were at least 19," to which Justice replied, "Thanks." Justice also told the girls they were "mature for [their] age." The girls then asked, "What is the youngest girl you've talked to?" Justice responded, "THIS IS NOT WHAT I DO TALK TO YOUNG GIRLS FOR A LIVING." (emphasis in original). Justice made multiple attempts to meet the girls, asking questions such as "[w]hat's the chance of me seeing yall tonight?" and "where yall at now?" Justice also told the girls he was "attracted" to them and "want[ed]" them.

The Commonwealth asked Greene why the text messages "were in any way related to Dese Johnson." Greene responded that the text messages "would have to be [related] because of the context of the conversation that I had with the girls w[as] consistent with some of the things that were in the screenshots that were emailed to me."

The Commonwealth offered the screenshots of the text messages into evidence. Johnson objected on the grounds of "relevance, authenticity, [and] lack of foundation." Johnson asserted that "[t]here's been no testimony" as to whom the phone numbers in the text messages belong. He contended that nothing "tie[d]" the conversation to Johnson except the girls' hearsay statements, and argued that the screenshots were therefore not "reliable enough" to be admissible. The Commonwealth responded that the evidence it presented established an "indicia of [the text messages'] reliability" because the girls gave Greene the name Dese Johnson, Greene "verif[ied] in his investigation that a person named Dese Johnson existed in the area," and

4

Johnson "matched" the girls' description of the man who approached them. The circuit court admitted the screenshots over Johnson's objection, but stated no reason for its ruling.

The circuit court subsequently ruled that hearsay evidence of the girls' statements was admissible. The court determined that there was sufficient evidence of the statements' "reliability," given that Johnson's name "was not suggested to [the girls]," Greene "confirmed that [Johnson] lives in the area," "the girls were seventeen years of age, not ten or twelve," and the girls' description of their interaction with Johnson was "consistent with [the] texts [messages]." Accordingly, the court ruled that Green could testify to the girls' statements. The circuit court subsequently admitted, over Johnson's renewed objection on confrontation grounds, the major violation report and statements written by the girls describing their interaction with Johnson.

Johnson's probation officer, Patricia Adkins ("Adkins"), testified to Johnson's behavior while on probation. She described Johnson's demeanor as "rude and demanding." During one of their meetings, she told Johnson he needed to begin "mandatory" sex offender treatment. Adkins testified that when she "told [Johnson] that he was being placed into treatment, he banged his head on the table, and then he picked his head up, and he pushed the table at [Adkins]," causing the table to "just barely" hit her. Adkins expressed "concerns" about Johnson remaining "in the community," stating "[s]omeone is going to get hurt very seriously, and it's going to be by Mr. Johnson."

Adkins testified that Johnson "was employed at the Dollar Tree or Dollar General," but reported to Adkins that he "lost his job" in April 2016. In the text messages, the man who identified himself as Justice stated that he works at "[D]ollar [T]ree."

5

Adkins further testified that Johnson was charged with malicious wounding and convicted of perjury based on his "testimony in [a proceeding concerning] the malicious wounding" charge, which was dismissed. The circuit court subsequently admitted, without objection, a conviction order showing Johnson was convicted of perjury in July 2016.

After the Commonwealth rested, Johnson proffered evidence he would have submitted during cross examination of the girls. Johnson stated the evidence would have shown that Johnson's name "does not appear anywhere on the Familywatchdog site and that in Port Royal in Caroline County [Johnson] does not appear on any of [the] [web]sites" in the major violation report. Johnson asserted that this evidence would have "contradict[ed]" some of the girls' statements.

At the conclusion of the evidence, the circuit court determined that "there [was] no question that [Johnson was] in violation of the conditions of his probation." The court stated that Johnson "has a felony conviction [for perjury], [s]o [the court] find[s] him in violation." The court heard argument on sentencing, and thereafter ruled:

> Taking into account a new conviction as well as your inability to be respectful and listen to your probation officer and evidence about the contact that you've made with underage females, the Court revokes twenty years and re-suspends fifteen years of your sentence on the same conditions that you were originally sentenced on.

On August 24, 2016, the circuit court entered an order in accordance with its ruling from the bench, revoking 20 years of Johnson's suspended sentence and resuspending 15 years.

Johnson appealed to the Court of Appeals, which denied his petition for appeal by per curiam order. Assuming without deciding that "the witnesses' testimony [at the probation revocation hearing] did not establish any [of] the reliability factors" articulated in *Henderson*, the Court of Appeals concluded that "any error would be harmless." The Court of Appeals

6

explained that "the evidence is uncontroverted that [Johnson] violated the conditions of [his] suspen[ded] [sentence]" by incurring "a felony conviction for perjury," "assault[ing] his probation officer by upending a table during one of their meetings," and being "aggressive, intimidating, and confrontational." Johnson appealed to a three-judge panel of the Court of Appeals, which denied his petition for the reasons stated in the per curium order.

Johnson appealed to this Court, and we granted his appeal on the following assignment of error:

> The Court of Appeals erred in deeming any violation of Appellant's due process right to confront the witnesses against him during a probation revocation hearing would be harmless error.

## II. Analysis

### A. Standard of Review

"[W]hether a defendant's due process rights are violated by the admission of evidence is a question of law, to which we apply a de novo standard of review." *Henderson*, 285 Va. at 329. We "view the evidence received at [a] revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it." *Id.*

### B. Right to Confrontation Under the Fourteenth Amendment

In his sole assignment of error, Johnson asserts that the Court of Appeals erred by determining that any violation of his right to confront witnesses against him under the Due Process Clause of the Fourteenth Amendment was harmless error. We need not determine whether any error was harmless because we conclude that the circuit court did not err by admitting hearsay evidence of Johnson's contact with the girls. *See Summers v. Syptak*, 293 Va. 606, 612 (2017). ("[W]e are 'not limited to the grounds offered by [a lower] court in support of

7

its decision,'" and are "entitled to affirm [a lower] court's judgment on alternate grounds, if such grounds are apparent from the record." (quoting *Perry v. Commonwealth*, 280 Va. 572, 582 (2010))).

The Fourteenth Amendment of the Constitution of the United States provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Supreme Court of the United States has held that the Due Process Clause of the Fourteenth Amendment "imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Black v. Romano*, 471 U.S. 606, 610 (1985). "Probation revocation, like parole revocation, is not a stage of a criminal prosecution." *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Consequently, "the 'full panoply' of constitutional rights to which [a defendant] was entitled at trial" do not apply to revocation proceedings. *Henderson*, 285 Va. at 325. "[T]he Sixth Amendment right to confrontation applies only in criminal trials,"[*] however, "a more limited right of confrontation was included in the Due Process Clause of the Fourteenth Amendment, applicable to parole and probation revocation proceedings." *Id*. at 325-26.

At a revocation proceeding, a defendant is "entitled to cross-examine adverse witnesses, unless the hearing body specifically finds good cause for not allowing confrontation." *Black*, 471 U.S. at 612. There are two tests for "determining whether the denial of the right to

---

[*] The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Pointer v. Texas*, 380 U.S. 400, 403 (1965), the Supreme Court of the United States held that "the Sixth Amendment's right of an accused to confront the witnesses against him is [] a fundamental right and is made obligatory on the States by the Fourteenth Amendment." Because probation revocation "is not a stage of a criminal prosecution," *Gagnon*, 411 U.S. at 782, the Sixth Amendment right of confrontation does not apply at a probation revocation proceeding, *Henderson*, 285 Va. at 325.

8

confrontation" was supported by "good cause." 285 Va. at 327. The "'balancing test[]' requires the court to weigh the interests of the defendant in cross-examining his accusers against the interests of the prosecution in denying confrontation." *Id*. at 327-28. The "reliability test" permits the admission of hearsay "if it possesses substantial guarantees of trustworthiness." *Id*. at 327.

> Some guarantees include (1) detailed police reports (as opposed to mere summaries of such reports by probation officers), (2) affidavits or other hearsay given under oath, (3) statements by the probationer that directly or circumstantially corroborate the accusations, (4) corroboration of accusers' hearsay by third parties or physical evidence, (5) statements that fall within a well-established exception to the hearsay rule, (6) evidence of substantial similarities between past offenses and the new accusations that bolsters the accuser's credibility, and (7) a probationer's failure to offer contradictory evidence.

*Id.* "The two tests are overlapping and are not mutually exclusive. For instance, when applying the balancing test, the reliability of the evidence may, in some circumstances, be so strong as to overwhelm the defendant's interests in confrontation." *Id.* at 328.

We have considered whether hearsay evidence was properly admitted in a probation revocation proceeding in two cases, *Turner v. Commonwealth*, 278 Va. 739 (2009), and *Henderson*. In *Turner*, we considered whether a probation officer's report that stated the defendant's polygraph test results indicated "deception" was properly admitted at a probation revocation proceeding. 278 Va. at 741-42. We noted that a "sentencing court is vested with wide discretion in probation revocation proceedings and 'formal procedures and rules of evidence are not employed.'" *Id.* at 742 (quoting *Gagnon*, 411 U.S. at 789). However, we agreed with the Court of Appeals' observation that "polygraph examinations are so thoroughly unreliable as to be of no proper evidentiary use whether they favor the accused, implicate the accused, or are agreed to by both parties." *Id.* at 743 (quoting *White v. Commonwealth*, 41 Va.

9

App. 191, 194 (2003)). Accordingly, we held that "[p]olygraph test results fall far short of the 'demonstrably reliable' hearsay evidence that may be admitted" in revocation proceedings. *Id.*

In *Henderson*, a detective testified to statements witnesses made regarding two robberies allegedly perpetrated by the defendant while on probation. 285 Va. at 322-23. The detective stated that the "witnesses were deterred from testifying by intimidation exerted upon them" by the defendant and his alleged co-conspirators in the robberies. *Id.* at 330. The defendant was "not prosecuted" for one of the robberies and the "Commonwealth took a nolle prosequi" in the other robbery case after "the victim refused to testify." *Id.* at 323-24.

We determined that the detective's testimony regarding witness intimidation was "corroborat[ed]" by the defendant's "tattoos depicting the signals and insignia" of a gang and pictures of the defendant "making the gang's hand signal." *Id.* at 330. Because the victims and the defendant "were residents of the same neighborhood," the victims "were likely aware that [the defendant] had just been released from eight years' imprisonment for [robbery,] a crime of violence." *Id*. at 322, 330. Further, the defendant and his co-conspirators made "direct threats against the victims" during "monitored telephone calls" from jail after their arrest for robbery. *Id.* at 331. We concluded that the "evidence of witness intimidation was alone sufficient to satisfy the 'balancing test.'" *Id.*

Additionally, the monitored telephone calls contained "implied admissions" of the defendant's participation in one of the robberies. *Id.* at 330. For example, the detective testified that the defendant described "an occurrence at the robbery scene" during a call with his mother. *Id.* at 331. In another call, a co-conspirator asked the defendant's brother to "take Danny's [the victim's] stuff out of your house." *Id.* at 324 (alteration in original). A co-conspirator also called his girlfriend "to ask her to get [the defendant's brother] to 'talk to' the victim." *Id*. We

10

determined that "[m]ost of the hearsay statements contained in the monitored telephone calls were not offered for the truth of the utterances, but rather to prove the state of the declarant's mind as it bore on consciousness of guilt, efforts to conceal participation in crime and desire to avoid detection." *Id.* at 331. Because "[t]hese matters fall outside the rule against hearsay" or "come within its well-recognized exceptions," we held that such statements "bear circumstantial guarantees of trustworthiness [that satisfy] the 'reliability test.'" *Id.*

In this case, the circuit court stated that its decision to revoke Johnson's probation was based, in part, on "the contact that [he] made with underage females." Therefore, two aspects of the girls' statements were material to the circuit court's ruling: first, that a man who knew the girls were minors made contact with them; and second, that the man who made such contact was Johnson.

The screenshots of the text messages corroborate the girls' allegation that a man interacted with them after learning they were minors. According to the major violation report, a man who identified himself as Justice approached the girls and gave them his phone number after learning their ages. In the text messages, the girls stated, "You said your name was Justice," to which the other party responded, "Yes." When the girls asked Justice for his full name, he replied "sorry but I don't give my full name to people I just met." The girls also asked, "Have you talked to anyone my age before? Do you think I'm mature enough?" Justice replied, "Just talked and yes mature for your age." The girls then asked, "What is the youngest girl you've talked to?" Justice replied, "THIS IS NOT WHAT I DO TALK TO YOUNG GIRLS FOR A LIVING." (emphasis in original). These statements corroborate the girls' assertion that the man who made contact with them knew that they were minors.

The text messages also corroborate the girls' identification of Johnson as the man who approached them. When the girls asked Justice, "Do you work?," he responded, "Yes[,] at [D]ollar [T]ree." Adkins testified that Johnson "was employed at the Dollar Tree or Dollar General," but reported to Adkins that he "lost his job" in April 2016. Because the girls reported that the contact occurred in May 2016, Johnson's employment at Dollar Tree or Dollar General supports the girls' assertion that the man who identified himself as Justice was Johnson. Additionally, when the girls stated in the text messages, "I don't believe you're 28 though, you look so young! I thought you were at least 19," Justice replied, "Thanks." Johnson's conviction order for perjury, which was admitted without objection, states his date of birth is October 7, 1987. Therefore, both Johnson and the man who identified himself as Justice were 28 years old in May 2016.

Green's testimony provides further support for the girls' assertion that the man who approached them was Johnson. Greene testified that he "confirm[ed] that there was a person living in the area that was named Dese Johnson." He also "confirm[ed]" that "the description that the girls gave [him]" of the man who approached them "match[ed]" the description of the sex offender named Dese Johnson "on the Virginia State Police website." Green also stated that "the context of the conversation that [he] had with the girls w[as] consistent with some of the things that were in the screenshots [of the text messages]."

The evidence presented at the revocation hearing established that Johnson and the girls lived in the same area, that the girls' statements to Green were consistent with statements in the text messages, and that the man who approached the girls shared the same age, place of employment, and physical appearance as Johnson. We hold that this evidence, when viewed as a whole, establishes the reliability of the girls' assertion that the man who approached them was

12

Johnson.  Accordingly, the circuit court did not violate Johnson's right to confront witnesses against him.

## III.  Conclusion

For the reasons stated, we will affirm the judgment of the Court of Appeals.

*Affirmed.*