# Richmond.

## VARNER, ETC. V. WHITE.

November 17, 1927.

1. EVIDENCE—*Witnesses—Corroborating Evidence—Definition—Sufficiency.*—
Corroborating evidence is such evidence as tends to confirm and
strengthen the testimony of the witness sought to be corroborated—
that is, such as tends to show its truth, or the probability of its
truth. How much of this character of evidence is necessary to
constitute corroboration is dependent on the facts and circumstances
of the particular case, and while no hard and fast rule can be laid
down on the subject, there must be sufficient to justify the belief
that the witness sought to be corroborated has testified to the
truth.

2. EVIDENCE—*Witnesses—Corroborating Evidence—Corroborating Evidence
Emanating from Mouth of Witness Sought to be Corroborated.*—Cor-
roborating evidence must not have emanated from the mouth of the
witness sought to be corroborated, nor be dependent wholly upon
his credibility. It must be other evidence which adds to, strength-
ens, confirms and corroborates his testimony.

3. EVIDENCE—*Witnesses—Corroborating Evidence—Relevancy—Separate and
Independent Items.*—Evidence for the purpose of corroboration
rarely, if ever, consists of a continuous narrative by one or more
witnesses. It usually consists of separate and independent items,
no one of which of itself would probably be sufficient, but when
joined together lead satisfactorily to the conclusion of the truth of
the testimony of the witness sought to be corroborated. These
separate items of evidence cannot all be introduced at once, but
have to be brought in one at a time, and the test of admissibility is
relevancy.

4. EVIDENCE—*Witnesses—Corroborating Evidence—Relevancy—Latitude Al-
lowed Court in Admission of Corroborating Evidence.*—The relevancy
of evidence offered to corroborate a witness is not always obvious
when the evidence is offered, or it may be relevant to a limited
extent only, and hence much latitude must be allowed to the wisdom
and discretion of the trial court, but the feature of the statute
(section 6209 of the Code of 1919) which requires corroboration, in
the class of cases to which it applies, is a wise one, and its observance
is necessary for the protection of the estates of decedents.

5. EVIDENCE — *Witnesses — Corroborating Evidence — Instructions — Relevancy—Striking Out.*—If, after the evidence is in, the evidence admitted to corroborate a witness under section 6209 of the Code of 1919 is found to be not of probative value, it should be stricken out and the jury should be clearly and distinctly instructed that it is not to be considered for any purpose. So, likewise, where it is relevant only for a particular purpose, or to a limited extent, this fact should be made very plain to the jury.

6. EVIDENCE—*Witnesses—Corroborating Evidence—Section 6209 of the Code of 1919—Case at Bar.*—In an action against the executors of a decedent, plaintiff's claim rested mainly on his own evidence. The only specific objection as not corroborative to the evidence admitted was to a question to a witness as to how long it was known in the neighborhood that decedent was suffering in his mind. Plaintiff had testified that he had asked the decedent twice about the bond which he claimed decedent had promised to cancel, and when asked why he had not spoken again to decedent about carrying out his agreement, replied that he had found out that decedent's mind was "out of fix" to transact business.

   *Held*: That while evidence as to the general understanding in the neighborhood as to decedent's mental condition was not competent to establish that status, it was competent to explain the conduct of plaintiff in dealing with him, and the trial court did not err in receiving the testimony of the witness for that purpose and under the restriction mentioned by the court.

7. WITNESSES—*Motion to Strike out Testimony—Corroboration of Plaintiff—Section 6209 of the Code of 1919—Case at Bar.*—In the instant case, after plaintiff had completed his evidence in chief, defendants moved the court to strike out the testimony of each and all of the witnesses for the plaintiff, except the plaintiff himself, naming twelve witnesses, on the ground that the testimony of each of these witnesses was irrelevant. The court overruled the motion. Much of the testimony of these witnesses was not of great probative force, but was relevant to the corroboration of the plaintiff, and it was for the jury to determine what weight should be given to it.

   *Held:* That the court did not err in overruling the motion to strike out. The motion was general "to strike out the testimony of each of said witnesses and of all of the witnesses." This could not be done, if the testimony of any one of them was relevant.

8. APPEAL AND ERROR—*Rule 22 of the Supreme Court of Appeals—Motion to Strike Out the Evidence of all of Plaintiff's Witnesses, except Plaintiff, on the Ground that the Testimony of each was Irrelevant.*—In the instant case after the plaintiff had completed his evidence in chief, defendants moved the court to strike out the testimony of each and all of the witnesses for plaintiff, except the

plaintiff himself, naming twelve witnesses, on the ground that the testimony of each of said witnesses was not relevant or competent. The trial court overruled the motion.

*Held:* That a litigant would not be permitted under Rule 22 of the Supreme Court of Appeals to make a general objection of this kind in the trial court, and to specify his objections for the first time in the Supreme Court of Appeals.

9.  EVIDENCE—*Witnesses—Corroboration of Evidence Under Section 6209 of the Code of 1919—Dealings between the Parties—Case at Bar.*—In the instant case, an action against the executors of a decedent, upon a promise of the decedent to cancel a bond of plaintiff's to decedent, plaintiff based his claim to have his bond surrendered to him on a valuable consideration, and not a mere parol gift. In order to show the consideration, it became necessary for plaintiff to show his dealings with the decedent out of which the consideration arose, and their subsequent agreements by which the method of discharging the obligation was shifted from one thing to another, finally resulting in the alleged agreement to cancel and deliver to the plaintiff his bond.

*Held:* That the testimony showing such dealings was admissible.

10.  EVIDENCE—*Witnesses—Corroboration of Witness under Section 6209 of the Code of 1919—Dealings between the Parties—Case at Bar.*—In an action by a son-in-law against his father-in-law's executors to recover the amount of a bond of the son-in-law in favor of his father-in-law, which the son-in-law claimed his father-in-law had promised to surrender for a valuable consideration, the following questions were specifically objected to by defendants as being irrelevant, which objections the court overruled: "State what arrangement or agreement you had with your father-in-law when you went to live with him. How long did you work for him? What settlement or agreement did you have in later years? So, then, as I understand you, your agreement when you went there was that, in addition to the one-fourth share of the crop, he was to settle with you in land or money and make you equal with the boys?"

*Held:* That the questions were relevant.

11.  EVIDENCE—*Witnesses—Corroboration of Witness Under Section 6209 of the Code of 1919—Dealings between the Parties—Appeal and Error—Reversible Error—Case at Bar.*—In an action by plaintiff against his father-in-law's executors upon an alleged promise of his father-in-law to cancel and surrender a bond of plaintiff, counsel for defendants objected to a question as to the value of the land that a son of the decedent got under his father's will. The answer fixed the value. The question was objected to as irrelevant but the objection was overruled. Plaintiff had testified that his original agreement with his father-in-law was that he was to be "made equal with the boys."

*Held:* That as the action was on the final contract of the parties, and not on the original agreement, it was not clear that this testimony was relevant but if irrelevant the error was not serious enough to require a reversal.

12. EVIDENCE—*Witnesses—Corroboration under Section 6209 of the Code of 1919—Instructions—Case at Bar.*—In an action by a son-in-law against his father-in-law's executors, where the plaintiff relied mainly upon his own testimony to establish his claim, the court refused to instruct the jury "that claims and charges set up against a dead man's estate, such as the claim in question here, are to be considered with suspicion, and must be clearly established by a preponderance of the evidence."

*Held:* That the instruction was improper because it invaded the province of the jury in saying that claims and demands "such as the claim in question here are to be considered with suspicion."

13. EXECUTORS AND ADMINISTRATORS—*Claim Against Estate—Proof—Preponderance of Evidence.*—A claim sought to be established by the testimony of a surviving creditor against a decedent's estate should be clearly established by a preponderance of the evidence. Claims against the estates of such persons ought not to be allowed unless clearly established by a preponderance of the evidence.

14. EXECUTORS AND ADMINISTRATORS—*Claim Against Estate—Proof—Preponderance of Evidence—Instructions—Additional Instruction where Point is Fully Covered by Other Instructions.*—In an action against executors to establish a claim against the estate the court refused to instruct the jury that claims against a dead man's estate were to be considered with suspicion, and must be clearly established by a preponderance of the evidence. Other instructions given at the request of the defendants clearly propounded the rule that such claims must be established by a preponderance of the evidence to the satisfaction of the jury.

*Held:* That in view of the other instructions in the case it was not error to refuse the instruction in question, as the jury were fully instructed on the subject.

15. APPEAL AND ERROR—*Section 6363 of the Code of 1919—Judgment Not Plainly Wrong or Without Evidence to Support It.*—Whatever may be the views of the Supreme Court of Appeals as to the preponderance of evidence, if it is unable to say that the judgment of the trial court supporting the verdict is plainly wrong or without any evidence to support it, it cannot set aside the judgment of the trial court.

Error to a judgment of the Circuit Court of Highland county, in a proceeding by motion for a judgment

for money.   Judgment for plaintiff.   Defendants as-
sign error.

*Affirmed.*

The opinion states the case.

*John M. Colaw* and *Curry & Carter*, for the plaintiffs
in error.

*Timberlake & Nelson* and *E. B. Jones*, for the defend-
ant in error.

BURKS, J., delivered the opinion of the court.

The parties will be designated as they stood in the
trial court.   Isaac White was the plaintiff, and the
executors of J. K. Varner were the defendants.   The
action was in the form of a proceeding by notice to
recover a judgment for the amount of a bond executed
by White to Varner for a deferred payment on land,
and which the plaintiff alleged that Varner had prom-
ised to cancel and deliver to him but had failed to do,
and which White had been compelled to pay.   There
was a verdict and judgment for the plaintiff, and the
defendants assign error.

In 1905, White married Varner's daughter, and a few
weeks thereafter Varner invited White to come and
live on his farm and cultivate it.   White accepted the
invitation and went to live on the farm, and a few years
thereafter built a house on a part of it and continued
to live on and cultivate the farm for fifteen years.   At
the time White went there, Varner had another daugh-
ter, who married a few years thereafter, and two boys
who were quite small.   The first year it was agreed
that White should have one-third of the crop as com-
pensation for his services.   The next year, according

to the testimony of White, it was agreed between the parties that White should thereafter receive one-fourth instead of one-third of the crop, and "in the divide" White "was to come in equal with the boys." This arrangement continued for some years when it was agreed that Varner should convey to White a parcel of his land known as "the Sipe meadow," but the two boys, who had grown up in the meantime, objected to the proposed conveyance, and Varner told White that he would make a satisfactory settlement with him in money when the papers were fixed up on the Fultz land which he was then contemplating buying.

Afterwards, Varner purchased the Fultz land at the price of $2,462, of which sum $500 was to be paid in cash, and for the residue three notes were to be given for $654 each, payable respectively April 1, 1921, 1922 and 1923. The deed to this land is dated July 15, 1919, and a vendor's lien was reserved to secure the unpaid purchase money.

By deed bearing date December 24, 1920, Varner conveyed to Hattie White, the wife of the plaintiff, by way of advancement, a tract of twenty acres of land, which he valued at $2,000. By the same deed Varner conveyed to White fifty-seven acres of land, adjoining that conveyed to his wife, for the price of $3,705, to be paid as follows: $500 cash, $654 April 1, 1921; $654 April 1, 1922; $654 April 1, 1923; and $1,243 April 1, 1924. A vendor's lien was reserved to secure the unpaid purchase money. It will be observed that the three notes of $654 are for the same amounts and mature on the same dates as the notes given by Varner for the Fultz land.

White testified as to the agreement between him and Varner, at the time this deed was made, as follows: "The agreement that we had about the $1,243 bond

was that he couldn't give me the meadow; but he said: 'In place of the meadow, I'll give you this $1,243 bond when you meet the other bonds.' He says: 'I'll hold it until the Fultz land is paid for, because I don't believe you can pay for it. I'll hold it, and when that bond is paid, I'll release the lien in the clerk's office'."

The plaintiff paid the three bonds of $654 each, and then asked for the cancellation and delivery to him of his bond for $1,243, and he testifies that Varner then admitted to him that he had assigned the bond for $1,243 to a third person. He then paid that bond to the assignee and shortly thereafter instituted the present suit to recover the amount paid by him from Varner's estate.

It further appears that Varner assigned the $1,243 bond without recourse, to the Highland Mercantile Company, on June 23, 1922, for an automobile which he gave to one of his sons. Prior to July 11, 1923, White had negotiated a loan from the Federal Land Bank of Baltimore, but its agent refused to deliver the check unless and until the vendor's lien on his land for $1,243 was marked satisfied. The evidence is conflicting as to what took place between White and Varner looking to the satisfaction of this lien, but, at all events, Varner released the vendor's lien on the margin of the deed where it was recorded, in the following language: "The debt secured by this vendor's lien, having been paid in full, I hereby release the said lien. Given under my hand this 11th day of July, 1923. J. K. Varner." It will be observed that this release was made more than a year after Varner had assigned the bond, but there was testimony for the defendants that he refused to make the release until he had assurance from responsible parties that he should not lose anything by reason thereof.

Varner died June 28, 1924, and this action was brought in July, 1925. Varner left a will, dated January 3, 1921, by which he gave Mrs. White one dollar, stating that she was to have no more, as he had already advanced her real estate of the value of $2,000, and leaving the bulk of his estate to his two sons.

There was testimony for the defendants that Varner was a very honest and honorable man; that he owed no debts at the time of his death and was particular about paying his debts; that shortly after his death there were conferences between his two sons-in-law about trying to break his will; that White never stated to the assignees of his bond, or to anyone else, that he did not owe the $1,243 bond, and that no claim was asserted by White upon the estate of Varner, nor was the existence of such claim known to his executors until nearly a year after the death of Varner.

The errors assigned are, that the court erred (1) in admitting certain evidence tendered by the plaintiff and objected to by the defendants, (2) in refusing an instruction tendered by the defendants, and (3) in refusing to set aside the verdict of the jury as contrary to the law and the evidence. Of these in their order.

1. The improper admission of evidence. White was the chief witness in his own behalf to establish a claim against the defendant's testator. Indeed, without his testimony his claim could not be established. In such case, the statute declares there could be no judgment in his favor "founded on his uncorroborated testimony.*" The evidence was offered to corroborate

* "Section 6209. If one party incapable of testifying, testimony of other party to be corroborated; when memoranda, etc., of an incapable party to be received in evidence.—In an action or suit by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of

White, and the objection was that it did not corroborate him.

[1, 2] Corroborating evidence is such evidence as tends to confirm and strengthen the testimony of the witness sought to be corroborated—that is, such as tends to show its truth, or the probability of its truth. How much of this character of evidence is necessary to constitute corroboration is dependent on the facts and circumstances of the particular case, and while no hard and fast rule can be laid down on the subject, there must be sufficient to justify the belief that the witness sought to be corroborated has testified to the truth. Such corroborating evidence, however, must not have emanated from the mouth of the witness sought to be corroborated, nor be dependent wholly upon his credibility. It must be other evidence which adds to, strengthens, confirms and corroborates his testimony. *Mills* v. *Commonwealth,* 93 Va. 815, 22 S. E. 863; *Burton* v. *Manson,* 142 Va. 500, 129 S. E. 356; *Davies* v. *Silvey,* 148 Va. 132, 138 S. E. 513.

[3–5] Evidence for this purpose rarely, if ever, consists of a continuous narrative by one or more witnesses. It usually consists of separate and independent items, no one of which of itself would probably be sufficient, but when joined together lead satisfactorily to the conclusion of the truth of the testimony of the witness sought to be corroborated. These separate items of evidence cannot all be introduced at once, but have to be brought in one at a time, and the test of admissibility is relevancy. The relevancy, however, is not always obvious when the evidence is offered, or it may

an adverse or interested party founded on his uncorroborated testimony and in such action or suit, if such adverse party testifies, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence."

be relevant to a limited extent only, and hence much latitude must be allowed to the wisdom and discretion of the trial court, but the feature of the statute which requires corroboration, in the class of cases to which it applies, is a wise one, and its observance is necessary for the protection of the estates of decedents. If, after the evidence is in, it is found to be not of probative value, it should be stricken out and the jury should be clearly and distinctly instructed that it is not to be considered for any purpose. So, likewise, where it is relevant only for a particular purpose, or to a limited extent, this fact should be made very plain to the jury.

[6] In the instant case, the only specific objection to evidence as not corroborative was to a question asked the witness, Hiner. The question was: "How long was it known there in the neighborhood that he was suffering in his mind. Tell the jury whether or not it was understood in the neighborhood that he was out of fix mentally?" The context plainly showed that the question was directed to the mental condition of J. K. Varner, and no question is made as to this. The objection was because the question "called for incompetent testimony and upon the well settled rule that the incompetency of a person cannot be shown by hearsay evidence, or by what is known about a person in the neighborhood where he lived." The court overruled the objection, and the witness answered: "That is what I understood. He would be bad by spells."

The plaintiff had testified that he had spoken to Varner twice about the bond, and when asked why he had not spoken to Varner again about carrying out his agreement, replied that he had found out from his visits to him that his mind was "out of fix" to transact

business, and the testimony of Hiner was offered to show that it was generally understood in the neighborhood that he was in bad mental condition, and to this extent to corroborate the testimony of the plaintiff. When the witness was permitted to answer, the court said: "I think, gentlemen, if we were dealing with the question of whether or not Mr. Varner were insane, the position of counsel for the defendants would be proper; but the plaintiff was seeking to explain why certain demands were not made, and I think that if he states the situation as the neighbors understood it, it is competent." Again, after all the evidence was in, and before the jury were formally instructed, the court restated its ruling as follows: "Evidence as to the general understanding in the neighborhood as to Varner's mental condition is not competent to establish that status and can in no wise be considered for that purpose, but it is competent to explain the conduct of White and of Varner's other neighbors in their dealings with him, and their general attitude towards him."

The trial court committed no error in receiving the testimony of Hiner for the purpose and under the restriction mentioned.

[7] After the plaintiff had completed his evidence in chief and rested his case, the defendants moved the court to strike out the testimony of each and all of the witnesses for the plaintiff, except the plaintiff himself, naming twelve witnesses, some of whom had testified at considerable length, on the ground "that the testimony of each of said witnesses was not relevant, or competent, or sufficient in character." The trial court overruled the motion, and the defendants excepted. In this there was no error.

Much of the testimony of these witnesses was not of great probative force, but was relevant to the cor-

roboration of the plaintiff, and it was for the jury to determine what weight should be given to it. One of the witnesses, Cobb, testified to an admission by Varner as to the original agreement in almost the identical language used by the plaintiff. Others testified to facts tending to corroborate the plaintiff. The motion was general "to strike out the testimony of each of said witnesses and of all of the witnesses." This could not be done, if the testimony of any one of them was relevant.

[8] Furthermore, the bill of exception does not conform to Rule 22 of this court, nor to our well established holding. *Norfolk & W. R. Co.* v. *Shott*, 92 Va. 34, 22 S. E. 811; *Kibler* v. *Com'th*, 94 Va. 804, 26 S. E. 858; *Kimball* v. *Carter*, 95 Va. 77, 27 S. E. 823, 38 L. R. A. 570; *Longley* v. *Com'th*, 99 Va. 807, 37 S. E. 339; *Robertson* v. *A. C. L. Realty Co.*, 129 Va. 494, 106 S. E. 521; *Burgess* v. *Com'th*, 136 Va. 697, 118 S. E. 273. It would be unfair to the opposing party and to the trial court not to point out specifically what testimony had been erroneously received, so that, if error had been committed, it could be corrected in that court. A litigant will not be permitted to make a general objection of this kind in the trial court, and to specify his objections for the first time in this court.

[9] The plaintiff based his claim to have his bond for $1,243 surrendered to him on a valuable consideration, and not a mere parol promise of a gift. In order to show the consideration, it became necessary for him to show his dealings with J. K. Varner out of which the consideration arose, and their subsequent agreements by which the method of discharging the obligation was shifted from one thing to another, finally resulting in the alleged agreement to cancel and deliver to the plaintiff his bond aforesaid. With this end in

view the court permitted the plaintiff to be asked a number of questions, which elicited the information given in the preliminary statement of facts given in this opinion.

[10] The following questions were specifically objected to: "State what arrangement or agreement you had with Mr. Varner when you went there to live?" "How many years did you stay there and work for Mr. Varner?" "What settlement, if any, or what agreement did you have in later years?" "Did you have a clear and definite agreement as to this?" "So, then, as I understand you, your agreement when you went there was that, in addition to the one-fourth share of the crop, he was to settle with you in land or money and make you equal with the boys?" "You and he had an agreement that you were to settle your account by giving you the Sipe meadow?" "Did he carry that agreement out?" The answer to the last question was: "No, sir; he did not."

Each one of these questions and the answers thereto were objected to by counsel for the defendants, but the objection was overruled, the trial court stating at the time: "All evidence tending to show the disposition Varner made of his property, and the character and amount of the work White did for him, has been admitted for the purpose of showing the probability or improbability of the existence of the preliminary agreements and of the final contract under which the plaintiff claims he is entitled to recover the amount paid by him on account of the $1,243 bond and for no other purpose. This is not a suit to recover for services performed, and for the further reason that the court desired the jury to have a full understanding of the dealings between the plaintiff and J. K. Varner." The evidence was relevant to the issue joined, and the trial court did not err in admitting it.

[11] The plaintiff was also asked this question by his counsel: "What is the value of the land that Luther got?" (Meaning the land that Luther Varner got under his father's will.) The answer fixed the value at $10,000. The question was objected to as irrelevant, but the objection was overruled. As the witness had testified that the original agreement was that he was to be "made equal with the boys," it was insisted that it was not irrelevant to show that by the last agreement by which he was to have his bond cancelled, he got much less than the other two sons. When this evidence was admitted, the trial court stated: "All evidence tending to show the disposition Varner made of his property, and the character and amount of the work White did for him, has been admitted for the purpose of showing the probability or improbability of the existence of the preliminary agreements and of the final contract under which the plaintiff claims he is entitled to recover the amount paid by him on account of the $1,243 bond, and for no other purpose. This is not a suit to recover for services performed." As the action was on the final contract of the parties, and not on the original agreement, it is not clear that this testimony is relevant to the issue, but if irrelevant the error in its admission is not of such serious moment as would require a reversal on that account only.

[12–14] It is assigned as error that the trial court refused to give the following instruction offered by the defendants:

"The court instructs the jury that claims and charges set up against a dead man's estate, such as the claim in question here, are to be considered with suspicion, and must be clearly established by a preponderance of the evidence."

The instruction was improper because it invaded

the province of the jury in saying that claims and demands "such as the claim in question here are to be considered with suspicion," but we approve the principle that a claim sought to be established by the testimony of a surviving creditor against a decedent's estate should be clearly established by a preponderance of the evidence. The Code of 1919 made radical changes in the competency of witnesses to testify, but section 6209 especially sought to safeguard from unjust demands the estates of persons who, "from any cause" were incapable of testifying. Claims against the estates of such persons ought not to be allowed unless clearly established by a preponderance of the evidence, but we are unable to see how the defendants were hurt by the refusal of the instruction aforesaid, in view of the instructions given at their request, especially instructions I and V, which were as follows:

Instruction I.—"The court instructs the jury that the burden of proof is on the plaintiff to make out and prove to the satisfaction of the jury, by a preponderance of the evidence, every material fact necessary to make out his case, and if the jury, after considering all the evidence in the case both for the plaintiff and the defendants, believe that the plaintiff has failed to do this, then they must find a verdict for the defendants."

Instruction V.—"The court instructs the jury that verbal agreements, such as the agreement relied on here by the plaintiff, must be proved and established by a preponderance of the evidence to the satisfaction of the jury."

Such a claim can hardly be said to be proved "to the satisfaction of the jury" unless it is clearly proved. The jury were fully instructed on the subject, and

where that is the case, it is not error to refuse additional instructions tendered. *Bowman* v. *First Natl. Bank,* 115 Va. 463, 80 S. E. 95; *Norfolk & W. R. Co.* v. *Spates*, 122 Va. 69, 94 S. E. 195; *Appalachian P. Co.* v. *Wilson*, 142 Va. 468, 129 S. E. 277; *Levine* v. *Levine,* 144 Va. 330, 132 S. E. 320.

[15] It is also assigned as error that the trial court refused to set aside the verdict because it is contrary to the law and the evidence. Whatever may be our views as to the preponderance of the evidence, we are unable to say that the judgment of the trial court supporting the verdict is plainly wrong or without any evidence to support it. When this is the case, we are without authority to set aside the judgment of the trial court. Code, 1919, section 6363.

Upon the whole case, we are of opinion to affirm the judgment of the trial court.

*Affirmed.*