COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Causey and Callins
Argued at Norfolk, Virginia

BON SECOURS-DEPAUL MEDICAL CENTER, INC., t/a
 DEPAUL MEDICAL CENTER, ET AL.

MEMORANDUM OPINION[*] BY
v.      Record No. 1134-22-1      JUDGE DOMINIQUE A. CALLINS
OCTOBER 31, 2023

VASILIA C. ROGAKOS-RUSSELL,
 ADMINISTRATOR OF THE ESTATE OF
 CONSTANTINE P. ROGAKOS, DECEASED

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Michelle J. Atkins, Judge

A. William Charters (C. Thea Pitzen; Jeffrey S. Kiser; Goodman
Allen Donnelly, PLLC, on briefs), for appellants.

Erin K. DeBoer (Amberley G. Hammer; Anchor Legal Group,
PLLC; Amberley Hammer Law, P.C., on brief), for appellee.


In this medical malpractice case, Bon Secours-DePaul Medical Center, Inc. and Bon

Secours-DePaul Medical Center, LLC (collectively, "the Hospital") appeal a jury verdict finding

the Hospital liable for negligently causing the fall and subsequent death of Father Constantine P.

Rogakos ("Fr. Rogakos"). On appeal, the Hospital asserts that the trial court erred in finding that

Fr. Rogakos's hearsay statements regarding his fall did not require corroboration under

Virginia's Dead Man's Statute, Code § 8.01-397; in failing to strike the testimony of the Estate's

expert witnesses; in denying the Hospital's request to use a stretcher as a demonstrative exhibit;

in refusing to give a jury instruction offered by the Hospital; and in denying the Hospital's

motions to strike and to set aside the verdict. For the following reasons, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

"In accordance with well-established principles, we recite the facts in the light most favorable to [the Estate], the prevailing party at trial." *Cooper Indus., Inc. v. Melendez*, 260 Va. 578, 584 (2000). "The verdict of the jury in favor of [the Estate], upon which the trial court entered judgment, settles all conflicts of testimony in [the Estate's] favor and entitles [the Estate] to all just inferences deducible therefrom." *Id.* (quoting *Pugsley v. Privette*, 220 Va. 892, 901 (1980)).

Fr. Rogakos was an 86-year-old retired Greek Orthodox priest. In the year before his death, Fr. Rogakos could no longer officiate church services independently because he "had difficulty walking and standing on his own." During church services, another priest "would have to hold his arm" to assist him in ascending the stairs to the altar. Fr. Rogakos drove himself to his church office daily, but he used a "quad" cane for walking when he left his house. Fr. Rogakos was able to wash, feed, and dress himself independently at home, but he used a "big chair" to sit in while changing his clothes. Fr. Rogakos also had a "history of multiple medical problems including chronic atrial fibrillation," a type of heart arrhythmia.

On Fr. Rogakos's birthday on October 26, 2018, he traveled to DePaul Medical Center in Norfolk, accompanied by his wife, Eleni Rogakos. Dr. Nabil Tadros, Fr. Rogakos's primary care physician, had ordered an outpatient abdominal ultrasound to evaluate Fr. Rogakos's abdominal symptoms. Two days before the ultrasound appointment, Fr. Rogakos's neurologist had observed that Fr. Rogakos had an abnormal "shuffling gait" when he walked. A hospital sonographer, Joanna Regan ("Regan"), arrived at the waiting room to take Fr. Rogakos to an exam room for his ultrasound. Fr. Rogakos used his cane when walking to the exam room.

When Fr. Rogakos and Regan arrived at the exam room, Regan "instructed him to remove [his] clothing from the waist up" and "put on the gown open in the back." Fr. Rogakos

responded, "okay," and Regan stepped out of the room to let him change. A few minutes later, Regan knocked on the exam room door, cracked it open, and asked Fr. Rogakos if he was ready, to which he responded, "no." Then, within a couple of seconds, Regan "heard what sounded like a fall" and found Fr. Rogakos moaning and grunting on the floor in front of the ultrasound stretcher. Regan called a "code green," and emergency medical personnel arrived and transported Fr. Rogakos to the hospital's emergency department.

Upon evaluation in the emergency department, Fr. Rogakos was "found to have large right periorbital hematoma as well as extracranial hemorrhage, with subdural and intracerebral elements." Fr. Rogakos was admitted into the intensive care unit and was interviewed by Dr. Tadros. In a written medical report, Dr. Tadros observed that Fr. Rogakos "was awake and verbal" and had stated that the ultrasound stretcher "was unlocked and when he leaned over to change his clothes, it moved and he lost his balance, fell, etc." Shortly after the interview, Fr. Rogakos's mental condition began deteriorating. He underwent a craniotomy and evacuation of the subdural hematoma and was then sedated and placed on a ventilator. After several days without improvement in his condition, Fr. Rogakos's family withdrew ventilator support. Fr. Rogakos died on November 5, 2018. Before he died, Fr. Rogakos told five individuals how and why his fall occurred: (1) Dr. Tadros, (2) a priest, George Bessinas ("Fr. Bessinas"), (3) Ms. Rogakos, (4) his daughter, Vasilia Rogakos-Russell, and (5) his other daughter, Georgia Rogakos Johnson.

Vasilia Rogakos-Russell, the administrator of the estate of Fr. Rogakos ("the Estate") subsequently sued Regan[1] and the Hospital on claims of wrongful death and survivorship, alleging that the Hospital was negligent in its care and treatment of Fr. Rogakos. The Estate

---

[1] Prior to trial, the Estate voluntarily nonsuited Regan. The Estate also took Regan's deposition, during which she testified that she could not remember whether she checked the stretcher wheels before the ultrasound appointment.

alleged that Fr. Rogakos fell because he had leaned on an ultrasound stretcher that was not locked into place, causing him to fall and hit his head, ultimately leading to his death. The Estate alleged that Regan was negligent by leaving Fr. Rogakos alone to prepare for his ultrasound, failing to ensure that the wheels on the ultrasound stretcher were locked, and failing to take precautions to prevent him from falling.

In May 2022, the Circuit Court of the City of Norfolk held a five-day jury trial. At the start of the trial, the Hospital stipulated that Fr. Rogakos "fell and struck his head while alone in the ultrasound room" and that, "[a]s a result of the fall, [he] suffered a right periorbital hematoma and brain injury requiring hospital admission." The Hospital also stipulated that Fr. Rogakos "did not recover from the injuries he suffered from the fall and died on November 5, 2018."

During its case-in-chief, the Estate elicited testimony regarding Fr. Rogakos's account of the fall from the five individuals with whom Fr. Rogakos spoke before his death. Dr. Tadros testified to his written statements in Fr. Rogakos's medical report that Fr. Rogakos told him that "the stretcher was unlocked, and when he leaned over to change his clothes, it moved, and he lost his balance, fell, et cetera." The medical report was admitted into evidence. Fr. Bessinas testified that Fr. Rogakos told him that "while he was in the room by himself changing, he supported himself on the ultrasound bed which gave way, and he fell and injured his head." Ms. Rogakos testified that Fr. Rogakos told her, "I went close to the bed and took my clothes off. And I went and put my right arm on the bed to support myself," "the bed moved and I fell down and I hit myself here." Vasilia testified that Fr. Rogakos told her, "I leaned on the bed for support, and it moved, and I lost my balance, and I couldn't catch myself. I fell." Georgia testified that Fr. Rogakos "told me that he leaned on the ultrasound bed and that the bed moved and that he lost his balance and he fell."

The Estate also elicited testimony from two expert witnesses: Steven Smith, an ultrasound technologist, and Joyce Hall-Ewell, a radiological technologist. According to both experts, the standard of care for preparing patients for ultrasounds required Regan to assess whether Fr. Rogakos was a fall risk, ensure that the wheels on the ultrasound stretcher were locked, stay with him in the ultrasound room, offer and provide him assistance, and help him sit down on the ultrasound stretcher to prevent a fall. The experts testified that the Hospital breached the standard of care by failing to assess Fr. Rogakos as a fall risk, failing to offer and provide him assistance in preparing for his ultrasound, failing to assist him in sitting on the ultrasound stretcher, and failing to ensure that the stretcher wheels were locked. Both experts opined that, had Regan complied with the standard of care, the fall would have been prevented.

After the Estate rested, the Hospital moved to strike on several grounds, all of which were denied by the trial court. The Hospital then presented evidence in its defense and renewed its motion to strike, which was again denied by the trial court. The court then submitted the case to the jury to determine whether the Hospital was negligent and whether such negligence was the proximate cause of Fr. Rogakos's fall. The jury returned a verdict in favor of the Estate and awarded two million dollars in damages to Fr. Rogakos's wife and two daughters. The Hospital renewed its motion to strike and moved to set aside the verdict, for the entry of judgment notwithstanding the verdict, and for a new trial. The trial court did not enter judgment at that time and provided the parties time to submit written post-trial motions.

On May 31, 2022, the Hospital filed a "Motion to Set Aside the Jury's Verdict and Motion for a New Trial" and a "Motion to Set Aside the Verdict and Motion for Judgment Notwithstanding the Verdict." The trial court denied both motions in a letter opinion and issued a final order on July 7, 2022. This appeal followed.

ANALYSIS

I.  Dead Man's Statute

The Hospital asserts that the final judgment in this case cannot be sustained under the first sentence of Virginia's Dead Man's Statute because Fr. Rogakos's statements regarding his account of the fall were not corroborated.  Neither party disputes that the Dead Man's Statute is applicable to this case, and the Hospital concedes that Fr. Rogakos's hearsay statements were admissible under the Dead Man's Statute's second sentence.

Virginia's Dead Man's Statute, Code § 8.01-397, provides, in relevant part:

> In an action by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony.  In any such action, whether such adverse party testifies or not, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence in all proceedings including without limitation those to which a person under a disability is a party.

"Dead man's statutes were enacted in response to the common-law rule disqualifying every witness interested in a case." *Shumate v. Mitchell*, 296 Va. 532, 541 (2018).  The statute functions to replace the "harsher common law rule" with "a requirement that [interested witnesses'] testimony be corroborated." *Diehl v. Butts*, 255 Va. 482, 488 (1998).  "[T]he corroboration required by [the Dead Man's Statute] is applicable only to that class of witnesses who were made competent for the first time by [the Dead Man's Statute]"; that is, those witnesses, adverse or otherwise, with an interest in the outcome of the case. *Epes' Adm'r v. Hardaway*, 135 Va. 80, 92 (1923).  However, "no corroboration is required of those witnesses who were competent before [the Dead Man's Statute] became operative, and who did not then require corroboration." *Id.* at 92-93.  This latter-referenced class encompasses disinterested

witnesses. "An adverse party, within the meaning of [the Dead Man's Statute], is one who is a party to the record, against whom or in whose favor a judgment is sought. An interested party is one, not a party to the record, who is pecuniarily interested in the result of the suit." *Merchants' Supply Co. v. Hughes' Ex'rs*, 139 Va. 212, 216 (1924). "[T]estimony is subject to the corroboration requirement if it is offered by an adverse or interested party and if it presents an essential element that, if not corroborated, would be fatal to the adverse party's case." *Johnson v. Raviotta*, 264 Va. 27, 32 (2002) (citing *Rice v. Charles*, 260 Va. 157, 165-66 (2000)).

"Corroborating evidence is such evidence as tends to confirm and strengthen the testimony of the witness sought to be corroborated—that is, such as tends to show the truth, or the probability of its truth." *Brooks v. Worthington*, 206 Va. 352, 357 (1965) (quoting *Varner's Ex'rs v. White*, 149 Va. 177, 185 (1927)). "It is not necessary that the corroborative evidence should of itself be sufficient to support a verdict." *Id.* "Nor is it essential that an adverse or interested party's testimony be corroborated on all material points." *Id.* "To be deemed sufficient under Code § 8.01-397, the corroboration 'must at least tend, "in some degree, of its own strength and independently, to support some essential allegation or issue raised by the pleadings [and] testified to by the [surviving] witness . . . which allegation or issue, if unsupported, *would be fatal to the case*."'" *Diehl*, 255 Va. at 489 (alterations in original) (quoting *Hereford v. Paytes*, 226 Va. 604, 608 (1984)). "The [Dead Man's S]tatute does not undertake to prescribe the source from which the corroborating evidence shall come. It may come from the mouth of any competent witness, or any other legal source." *Arwood v. Hill's Adm'r*, 135 Va. 235, 242 (1923).

Here, the Hospital's argument is flawed at the outset because, under the plain language of Code § 8.01-397, it is the testimony of the "adverse or interested party" that requires corroboration to sustain a judgment in the adverse or interested party's favor—not the statements

of the decedent. This is a subtle, yet critical distinction. In this case, Vasilia, administrator of Fr. Rogakos's estate, as a party to the record, is an adverse party to the Hospital; Ms. Rogakos and Georgia are interested parties, since they have a pecuniary interest in the result of the suit. Thus, their status as adverse or interested parties subjected their testimony regarding Fr. Rogakos's account of the fall to the corroboration requirement under the Dead Man's Statute to sustain a judgment in the Estate's favor.

We conclude that the testimony of Ms. Rogakos, Vasilia, and Georgia regarding Fr. Rogakos's account of the fall was sufficiently corroborated by Dr. Tadros and Fr. Bessinas. Both men were disinterested parties to the action and thus were competent witnesses whose testimony was not subject to the corroboration requirement of the Dead Man's Statute. As such, their testimony regarding Fr. Rogakos's account of the fall could legitimately serve as corroborative evidence of Ms. Rogakos's, Vasilia's, and Georgia's testimony. *See Arwood*, 135 Va. at 242 (explaining that corroborating evidence under the Dead Man's Statute "may come from the mouth of any competent witness"); *cf. Clark v. Atkins*, 188 Va. 668, 672-73 (1949) (finding that the testimony of nine witnesses as to a decedent's statements to the witnesses regarding an oral agreement with his son "afford[ed] sufficient corroboration" of the oral agreement under the Dead Man's Statute because these witnesses were mostly "not interested or related to the parties"). In other words, because the disinterested witnesses' testimony could stand independent of that of Fr. Rogakos's family members and need not be corroborated, the testimony of Dr. Tadros and Fr. Bessinas could itself corroborate the family members' testimony.

Further, the testimony of Dr. Tadros and Fr. Bessinas was fully consistent with that of Fr. Rogakos's family members regarding Fr. Rogakos's account of the fall and supported an essential allegation raised in the pleadings—namely, that an unlocked ultrasound stretcher

- 8 -

caused Fr. Rogakos's fall. Dr. Tadros testified that Fr. Rogakos told him that "the stretcher was unlocked, and when he leaned over to change his clothes, it moved, and he lost his balance, [and] fell." Fr. Bessinas testified that Fr. Rogakos told him that "while he was in the room by himself changing, he supported himself on the ultrasound bed which gave way, and he fell and injured his head." Thus, Dr. Tadros's and Fr. Bessinas's testimony sufficiently corroborated Ms. Rogakos's, Vasilia's, and Georgia's testimony regarding Fr. Rogakos's account of the fall. Since the testimony of the adverse or interested parties in this case was sufficiently corroborated by other competent witnesses, we hold that the final judgment can be sustained under the first sentence of the Dead Man's Statute.

## II. Expert Testimony

The Hospital asserts that the trial court erred in failing to strike the testimony of the Estate's expert witnesses on causation because the experts' testimony was not based on an adequate factual foundation and was speculative.

"The admission of expert testimony is a matter within the sound discretion of the trial court, and we will reverse the trial court's judgment only when the court has abused this discretion." *Keesee v. Donigan*, 259 Va. 157, 161 (2000). An expert witness "may give testimony and render an opinion or draw inferences from facts, circumstances or data made known to or perceived by such witness at or before the hearing or trial during which he is called upon to testify." Code § 8.01-401.1; *accord* Va. R. Evid. 2:703(a). "Expert testimony generally is admissible in civil cases if it will aid the trier of fact in understanding the evidence." *Keesee*, 259 Va. at 161. "However, the admission of expert testimony is subject to certain fundamental requirements, including the requirement that the evidence be based on an adequate foundation." *Id.* "Thus, expert testimony is inadmissible if it is founded on assumptions that have an insufficient factual basis." *Id.* "An expert opinion . . . must have an adequate factual foundation,

and an expert's testimony will be found to be inadmissible if it is speculative in nature." *Norfolk S. Ry. Co. v. Rogers*, 270 Va. 468, 479 (2005).

Here, the Estate's two expert witnesses, Smith and Hall-Ewell, opined as to the applicable standard of care and testified that the Hospital breached the standard of care and that Fr. Rogakos's fall would have been prevented had the Hospital complied with the standard of care. In reaching their opinions, the experts relied on the following factual foundation: Fr. Rogakos was an elderly 86-year-old man who walked with a quad cane; Fr. Rogakos's neurology records documented that he walked with a "shuffling gait" two days before his ultrasound appointment; Fr. Rogakos stated to Dr. Tadros that the stretcher was unlocked and that the stretcher moved when he leaned on it while changing, leading to his fall; and Regan testified during her deposition that she did not offer any assistance to Fr. Rogakos in preparing for his ultrasound. This factual foundation adequately supported the expert witnesses' opinions, and thus, the trial court did not err in allowing the expert testimony.

Contrary to the Hospital's argument on brief, Smith and Hall-Ewell did not offer an expert opinion as to whether the Hospital's negligence proximately caused Fr. Rogakos's fall. We conclude that such expert opinion on causation was unnecessary in this case, however, because whether or not the Hospital's negligence caused Fr. Rogakos's fall was an issue that fell within the jury's common knowledge and experience, and thus did not require specialized medical knowledge. *Cf. Summers v. Syptak*, 293 Va. 606, 613 (2017) ("[E]xpert testimony is unnecessary [when] the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." (second alteration in original) (quoting *Beverly Enters.-Va. v. Nichols*, 247 Va. 264, 267 (1994))). Moreover, the Estate did not have to rely on expert testimony to prove that Fr. Rogakos's fall caused his injuries and death because the Hospital stipulated to that fact during trial.

III.  Demonstrative Exhibit

The Hospital asserts that the trial court erred in denying the Hospital's request to use as a demonstrative exhibit a stretcher (alternatively referred to as a "hospital bed") of the same make and model as the stretcher in question.

"Admission of items of demonstrative evidence to illustrate testimonial evidence is . . . a matter within the sound discretion of a trial court."  *Mackall v. Commonwealth*, 236 Va. 240, 254 (1988).  The use of demonstrative exhibits "lies within the sound discretion of the trial judge, who is allowed very considerable latitude with respect to the substance and form of the parties' presentation of the case."  *Curtis v. Commonwealth*, 3 Va. App. 636, 642 (1987).  "[W]hen a decision is discretionary . . . 'the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'"  *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013) (second and third alterations in original) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)).  "An abuse of discretion occurs 'only when reasonable jurists could not differ' as to the proper decision."  *Stark v. Dinarany*, 73 Va. App. 733, 755 (2021) (quoting *Allen v. Allen*, 66 Va. App. 586, 601 (2016)).

Here, the trial court denied the Hospital's request to use a stretcher as a demonstrative exhibit because it found "that the prejudicial effect of the proffered hospital bed substantially outweigh[ed] any probative value."  *See* Va. R. Evid. 2:403.  The trial court also found that "there [wa]s a high likelihood that the hospital bed may mislead the jury as to the ability to lock and ensure that the wheels were locked because the proffered bed [wa]s not the bed that the decedent leaned against."  Finally, the trial court "note[d] that counsel proffered at the last hearing that they have pictures of the hospital bed which it can utilize at trial."  In light of these considerations, we find that the trial court exercised sound discretion in its decision to exclude

- 11 -

the stretcher as a demonstrative exhibit, and we cannot say that no reasonable jurist could have come to the same decision. Thus, we will not disturb the trial court's decision.

IV. Jury Instruction

The Hospital asserts that the trial court erred in refusing one of the Hospital's requested jury instructions, which stated:

> If you believe from the evidence that the death of Constantine P. Rogakos might have resulted from either of two causes, for one of which the Defendants might have been responsible and for the other of which the Defendants were not responsible, and if you are unable to determine which of the two causes occasioned Constantine P. Rogakos's fall, then the plaintiff cannot recover.

The Hospital claims that this jury instruction is an accurate statement of Virginia law and was supported by more than a scintilla of evidence at trial.

"A trial court's decision whether to grant or refuse a proposed jury instruction is generally subject to appellate review for abuse of discretion." *Howsare v. Commonwealth*, 293 Va. 439, 443 (2017). "When we review a trial court's decision to refuse jury instructions, the evidence is viewed in the light most favorable to the proponent of the instruction." *Hancock-Underwood v. Knight*, 277 Va. 127, 130 (2009). "A litigant is entitled to jury instructions supporting his or her theory of the case if sufficient evidence is introduced to support that theory and if the instructions correctly state the law." *Schlimmer v. Poverty Hunt Club*, 268 Va. 74, 78 (2004). "The evidence presented in support of a particular instruction 'must amount to more than a scintilla.'" *Id.* (quoting *Justus v. Commonwealth*, 222 Va. 667, 678 (1981)). "If a proffered instruction finds any support in credible evidence, its refusal is reversible error." *Hancock-Underwood*, 277 Va. at 131 (quoting *McClung v. Commonwealth*, 215 Va. 654, 657 (1975)). But "[w]here other instructions fully and fairly cover the principles of law governing the case, the trial court does not err in refusing an additional instruction on the same subject." *Howsare*, 293 Va. at 443.

We hold that the trial court did not abuse its discretion in refusing the Hospital's proposed instruction because the subject matter of the instruction was fully and fairly covered by Jury Instruction No. 11, which stated:

> You shall find your verdict for the Plaintiff if she has proved by the greater weight of the evidence that:
>
> (1) DePaul Medical Center was negligent; and that
>
> (2) DePaul Medical Center's negligence was a proximate cause of Constantine P. Rogakos's fall.
>
> You shall find your verdict for the Defendant if the Plaintiff has failed to prove either or both of the two elements above.

To instruct the jury that the "plaintiff cannot recover" if the jury is "unable to determine which of . . . two causes occasioned Constantine P. Rogakos's fall" is simply another way of instructing the jury to "find your verdict for the Defendant if the Plaintiff has failed to prove" that "DePaul Medical Center's negligence was a proximate cause of Constantine P. Rogakos's fall." As such, the Hospital's proposed jury instruction was a superfluous instruction on a subject matter already addressed by another instruction.

## V. Motions to Strike and to Set Aside the Verdict

The Hospital asserts, on several different grounds, that the trial court erred in denying the Hospital's motions to strike and to set aside the verdict.

When an appellate court assesses a trial court's denial of a motion to strike, "the trial court's judgment will not be disturbed unless it is plainly wrong or without evidence to support it." *Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 37 (2022) (quoting *Nolte v. MT Tech. Enters., LLC*, 284 Va. 80, 90 (2012)). "We review a [trial] court's decision on a motion to strike in the light most favorable to the non-moving party, and the non-moving party 'must be given the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom.'" *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 109 (2021) (quoting *Egan v. Butler*,

290 Va. 62, 73 (2015)).  "A denial of a motion to strike is error only if it 'is conclusively apparent that [the non-moving party] has proven no cause of action' or the non-moving party's position is plainly without evidence to support it."  *Dixon v. Dixon*, 71 Va. App. 709, 714 (2020) (alteration in original) (quoting *Parson v. Miller*, 296 Va. 509, 524 (2018)).

Likewise, we "will not set aside a trial court's judgment sustaining a jury verdict unless it is 'plainly wrong or without evidence to support it.'"  *Dixon v. Sublett*, 295 Va. 60, 66 (2018) (quoting Code § 8.01-680).  "'[W]here the trial court has declined to . . . set aside a jury verdict,' this Court 'consider[s] whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff.'"  *Boyd v. Weisberg*, 75 Va. App. 725, 736 (2022) (alterations in original) (quoting *Ferguson Enters., Inc. v. F.H. Furr Plumbing, Heating & Air Conditioning, Inc.*, 297 Va. 539, 547-48 (2019)).  This Court "must accord the party who received the verdict the benefit of all substantial conflict in the evidence, as well as all reasonable inferences that could be drawn therefrom."  *Kendrick v. Vaz, Inc.*, 244 Va. 380, 384 (1992).  "[I]f reasonably fairminded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive and cannot be disturbed either by the trial court or by this [C]ourt."  *Shumate*, 296 Va. at 550 (second alteration in original) (quoting *Gilliam v. Immel*, 293 Va. 18, 24 (2017)).

A.  *Proximate Cause*

The Hospital first asserts that the trial court erred in denying the Hospital's motions to strike and to set aside the verdict because the Estate failed to establish proximate cause by failing to show how and why Fr. Rogakos's fall occurred.  The Hospital also asserts that the Estate failed to establish proximate cause by failing to prove that Fr. Rogakos's fall and subsequent injuries and death were foreseeable.

- 14 -

"The elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff." *Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 271 Va. 206, 218 (2006). "[A] plaintiff in a tort action must establish negligence by a preponderance of the evidence." *Doe v. Terry*, 273 Va. 3, 8 (2007). "In a medical malpractice case, as in other types of negligence actions, the plaintiff must prove not only that the defendant violated the applicable standard of care and was therefore negligent, but also that the defendant's negligent acts were a proximate cause of the injury." *Howell v. Sobhan*, 278 Va. 278, 283 (2009). "The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Id.* at 283-84 (quoting *Doherty v. Aleck*, 273 Va. 421, 428 (2007)).

"Generally, in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that the injury should have been foreseen in the light of the attending circumstances." *Interim Pers. of Cent. Va., Inc. v. Messer*, 263 Va. 435, 442 (2002). "Negligence carries with it liability for consequences that, in view of the circumstances, could reasonably have been anticipated by a prudent person, but not for casualties which, though possible, were wholly improbable. A party is not charged with foreseeing that which could not be expected to happen." *Id.* "However, the precise injury need not be foreseen by a defendant. It is sufficient that an ordinary, prudent person ought, under the circumstances, to have foreseen that an injury might probably (not possibly) result from the negligent act." *Id.*

"The issue of proximate causation, like that of negligence, is ordinarily a question of fact for a jury to decide." *Howell*, 278 Va. at 284. "A trial court should decide the issue of proximate causation 'only when reasonable persons could not differ.'" *Id.* (quoting *Jenkins v.*

*Payne*, 251 Va. 122, 128 (1996)).  "The evidence tending to show causal connection must be sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference, before a question of fact for submission to the jury has been made out." *Blue Ridge*, 271 Va. at 218.  "It is incumbent on the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover." *Id.* (quoting *Weddle v. Draper*, 204 Va. 319, 322 (1963)).

The evidence supports the conclusion that Fr. Rogakos's fall was a reasonably foreseeable consequence of the Hospital's negligence.  In this case, the Estate's expert witnesses established that the standard of care required the Hospital to assess Fr. Rogakos as a fall risk and assist him in preparing for his ultrasound to minimize any risk of a fall and to ensure his safety.  Thus, it was reasonably foreseeable that Fr. Rogakos could fall while preparing for his ultrasound if the Hospital failed to adhere to the standard of care by not offering and providing him any assistance.  Moreover, considering the fact that Fr. Rogakos was an elderly 86-year-old man with difficulty walking and a history of medical issues, it was also reasonably foreseeable that he could potentially experience a serious fall that could result in catastrophic injury and, ultimately, death.

We also conclude that the Estate's evidence was sufficient to prove that the Hospital's negligence proximately caused Fr. Rogakos's fall.  The expert testimony in this case established that the Hospital breached the standard of care by failing to assess Fr. Rogakos as a fall risk, failing to offer and provide him assistance in preparing for his ultrasound, failing to assist him in sitting on the ultrasound stretcher, and failing to ensure that the stretcher wheels were locked.  Critically, both of the Estate's expert witnesses testified that the fall would have been prevented if the Hospital had complied with the standard of care.  Thus, the jury could conclude that the Hospital's failure to assist Fr. Rogakos was the proximate cause of his fall because this was an

"act or omission . . . [that] produce[d] the event, and without which that event would not have occurred." *Howell*, 278 Va. at 283-84.

Moreover, the exact nature of Fr. Rogakos's fall was not left to pure conjecture or speculation in this case because the Estate presented the testimony of five different witnesses who all gave similar testimony as to Fr. Rogakos's account of the fall: that he had leaned on the ultrasound stretcher to support himself while changing his clothes, that the stretcher moved, and that he lost his balance and fell. Dr. Tadros also testified that Fr. Rogakos had told him that the stretcher wheels were unlocked, and Dr. Tadros recorded Fr. Rogakos's statements in a medical record that was admitted into evidence at trial. And finally, as explained in Section I, *supra*, the testimony of these five witnesses did not run afoul of the Dead Man's Statute because the testimony of Fr. Rogakos's wife and two daughters was sufficiently corroborated by two disinterested witnesses, Dr. Tadros and Fr. Bessinas.

In sum, the jury's finding that the Hospital's negligence proximately caused Fr. Rogakos's fall was not plainly wrong or without evidence to support it. Thus, the trial court did not err in denying the Hospital's motions to strike and to set aside the verdict on these grounds.

### B. *Failure to Check the Stretcher Wheels*

The Hospital secondly asserts that the trial court erred in denying the Hospital's motions to strike and to set aside the verdict because there was insufficient evidence to prove that the ultrasound stretcher wheels were unlocked and insufficient evidence to prove that Regan failed to check whether the stretcher wheels were locked.

We hold that the evidence was sufficient to support a finding that the ultrasound stretcher wheels were unlocked and that Regan failed to check whether the stretcher wheels were locked. First, Fr. Rogakos stated to Dr. Tadros after the fall that the ultrasound stretcher wheels were

unlocked, and Dr. Tadros recorded this statement in a medical record that was admitted as an exhibit during trial. Second, Fr. Rogakos told three family members that the stretcher moved when he leaned on it, and those statements were corroborated by two disinterested witnesses—Dr. Tadros and Fr. Bessinas—satisfying the requirements of the Dead Man's Statute. And finally, Regan testified during her deposition that she could not remember whether she checked the stretcher wheels before the ultrasound appointment. Viewing this evidence in its totality supports a finding that the stretcher wheels were unlocked and also supports a reasonable inference that Regan failed to check the stretcher wheels before Fr. Rogakos's ultrasound appointment. Therefore, the trial court did not err in denying the Hospital's motions to strike and to set aside the verdict on these grounds.

### C. *Failure to Offer Assistance*

The Hospital finally asserts that the trial court erred in denying the Hospital's motions to strike and to set aside the verdict because there was no evidence that, had Regan offered to assist Fr. Rogakos, he would have accepted the offer.

The Hospital's argument fails because the applicable standard of care as testified to by the Estate's expert witnesses required Regan to do more than simply offer assistance to Fr. Rogakos: the standard of care required Regan to actually provide Fr. Rogakos assistance in preparing for his ultrasound, which was not dependent on whether he would have accepted an offer of assistance or not. As such, there was no requirement in this case for the Estate to prove that Fr. Rogakos would have accepted an offer of assistance by Regan. Therefore, the trial court did not err in denying the Hospital's motions to strike and to set aside the verdict on these grounds.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*